The Savannah, Florida & Western Railway Company *v.*
The Mayor & Aldermen of the City of Savannah.

1. That the charter of a city provides for the appointment by the
mayor and aldermen of freeholders to assess the damages sustained
by lot owners in consequence of the opening or extension of any
street, with power to the mayor and aldermen to enforce the award
or decision of these assessors, without providing for notice of any
kind to such lot owners as to these matters, would not render the
charter violative of the constitutional prohibition against depriv-
ing persons of their property without due process of law, if the
charter made any provision for such notice to lot owners as would
allow them an opportunity to be heard with reference to the
amount of the compensation to be paid them before such assess-
ments should become finally binding and conclusive upon them. ·

2. In the absence of any provision whatever for such notice in a city
charter, it is unconstitutional in the respect above indicated; and
a mere general declaration therein that the owner or owners of
land affected by the decision of the assessors shall have the right
to appeal therefrom to a jury in the superior court, without pro-
viding for any notice to such lot owner or owners of the rendition
of such decision, so as to enable them to exercise the right of ap-
peal, is too vague, indefinite and uncertain to cure the defect in
the charter.

3. As that portion of the charter now under review is unconstitutional,
all the proceedings under it were necessarily void, and the court
ought to have granted the injunction prayed for, and thus have re-
strained the further progress of these proceedings.

August 16, 1895.

Petition for injunction. Before Judge Falligant.
Chatham county. April 5, 1895.

The municipal authorities of Savannah proceeded,
under the city charter (Code, §4849), to extend sev-
eral of the streets of the city over the right of way and
railroad tracks of the railway company; and on October
10, 1894, adopted by resolution the report of five free-
holders appointed in February before, to assess the
damage which would be sustained by the company by
reason of said extension. On October 17, the company
brought its petition to restrain further proceeding to

condemn its property. The petition alleged, among other grounds, that there was no authority of law for the mayor and aldermen to condemn this property or open streets across plaintiff's railroad tracks or property; that the proceedings had been entirely *ex parte*, plaintiff having had no voice therein or in the appointment of assessors, and no opportunity to introduce any evidence or present any argument before them; and that the proceedings were without due process of law and totally void.   The injunction was denied, and plaintiff excepted.

ERWIN, DUBIGNON & CHISHOLM, for plaintiff.
SAMUEL B. ADAMS, for defendants.

LUMPKIN, Justice.

All the authorities agree that, in the exercise of the power of eminent domain, the owner of property taken or damaged for public uses is entitled to be heard upon the question of compensation; and in order that this right may be made available, he must be given such notice as will afford him a reasonable opportunity to be heard.   As to this, there is no contrariety of judicial opinion.   Many differences of opinion have arisen, however, as to the constitutionality of statutes, including city charters, which authorize condemnation proceedings without at the same time providing definitely for notice to property-owners to be affected thereby.   We have examined a large number of decisions and text-books bearing more or less directly upon questions arising upon such statutes in cases similar to the one now in hand. We shall not cite or discuss these authorities, however, for the reason that one marked result of our investigation, so far as they are concerned, has led to confusion and darkness, rather than to clearness and light.   Some of the courts, in our opinion, have strained too far in upholding statutes whose constitutionality has been called in question; while other courts have strained

equally hard in the opposite direction, and have declared invalid laws which might, it seems to us, have reasonably been upheld.

While not absolutely free from doubt, and while exceedingly reluctant to disturb a section in a city charter which apparently has stood unchallenged as to its constitutionality for a very great length of time, we feel sufficient confidence in the correctness of the conclusion we have finally reached to regard it our duty to declare unconstitutional that portion of the charter of the city of Savannah which the present case brings into review. It is to be found in section 4849 of the code. This section confers upon the mayor and aldermen the power to appoint freeholders to assess the damages sustained by lot owners in consequence of the opening or extension of any street, and also declares that the municipal authorities shall have the power to enforce the award or decision of these assessors. It does not provide for any notice to the lot owners as to the appointment of the assessors, allow such owners any voice in the selection of the assessors, or give the lot owners any opportunity to be heard by the assessors upon the question of compensation. Nevertheless, we are of the opinion that the failure to provide for notice to the lot owners as to these matters would not, of itself alone, be fatal to the constitutionality of this section of the charter; because the action taken by the assessors (as is universally conceded) could never become finally binding and conclusive upon the property-owners until after a legal hearing of some sort had been allowed them as to the amount of compensation to be paid for the property of which they were deprived. We are therefore prepared to say that, notwithstanding this failure, we could sustain the section if the charter anywhere provided for such notice to the lot owners as would allow them to be heard before some appropriate tribunal upon

this question. This charter, however, contains no provision of this kind fairly capable of practical enforcement. The only thing in it which could be said to amount to such a provision is a mere general declaration that the owner or owners of land affected by the decision of the assessors shall have the right to appeal therefrom to a jury in the superior court. This is all there is upon the subject. The charter is silent as to how any notice to the lot owners of the rendition of the assessors' decision is to be given. It contains not a single word as to when, or how, the appeal is to be entered. The lot owner is left absolutely in the dark as to these matters. The charter, of course, implies that at some time or other he should become informed that proceedings have been instituted to condemn his property; but how is he to ascertain this fact? So far as the statute speaks, by chance or accident only; for the municipal authorities are not placed under the slightest obligation or duty to give him any information whatsoever upon the subject. We therefore do not think that the charter, by its terms, affords the lot owner any reasonable opportunity to exercise the right of appeal. If the four days rule governing ordinary appeal cases is applicable, the assessors might make their decision; the same might be approved by the mayor and aldermen, and the four days run out before the lot owner ever heard of the matter. If the four days rule does not apply, when must he appeal? It would be arbitrary to fix any number of days; and therefore the only answer to this question would be, that he must appeal within a reasonable time. Then the vexatious question arises, what would be a reasonable time? It will be perceived, from these and other suggestions which might be made, that the charter, as to the matter in hand, is too vague, indefinite and uncertain to cure the great defect in it arising from its failure to make suitable pro-

vision for notice to those whose lands are to be taken for public streets. Accordingly, we are constrained to hold that it is violative of that section of our constitution which declares that no person shall be deprived of his property except by due process of law.

*Judgment reversed.*