LANHAM & SONS COMPANY *v.* CITY OF ROME *et al.*
BOSWORTH *v.* CITY OF ROME *et al.*

1. The attack upon the passage of the acts of the legislature here involved is controlled by the decisions in *DeLoach* v. *Newton,* 134 *Ga.* 739 (68 S. E. 708), and *Atlantic Coast Line R. Co.* v. *State,* 135 *Ga.* 545 (69 S. E. 725).

2. Where a municipal charter authorized the paving of streets and the assessment of a specified portion of the cost thereof upon lots abutting upon them, required notice to be given to the owners of such lots, and provided a method by which such owners should have an opportunity to question and have a judicial determination as to the validity and amount of such assessments in proceedings for their collection, this satisfied the constitutional requirement of due process of law.

3. A statute which afforded such opportunity for contest by means of an equitable proceeding for injunction was not obnoxious to the provision of the fourteenth amendment of the constitution of the United States, which declares that no State shall deprive any person of property without due process of law, because such act required that the contesting property owner should pay the amount which he admitted to be due, if any, and that this should be set out in the proceedings and verified.

4. While the act of 1907 (Acts 1907, p. 897), and the act of 1908 (Acts 1908, p. 904), amending the charter of the City of Rome, were repealed by the act of 1909 (Acts 1909, p. 1255), the last-mentioned act covered the subject-matter of the two former, and substantially re-enacted their provisions, with certain changes. It did not destroy the right of the municipality to collect executions which had previously been issued for assessments upon abutting property for street paving.

5. A ground of attack upon executions issued to collect assessments for street paving, alleging that they did not follow the law under which they were issued in relation to the property upon which a levy should be made, will be treated as abandoned where not referred to in the brief.

6. As the acts of the legislature under which these proceedings were had were not unconstitutional for any reason urged against them, and as ample opportunity was furnished to the owners of abutting lots to contest the amount of the assessments or the legality of the proceedings to levy and collect them, if owners of such property did not pursue the remedy thus provided, but proceeded by general equitable petition to enjoin the collection of such assessments, on the ground that the proceedings were not in accordance with the law, and certain items of the assessments were improper, an injunction was properly refused.

JUNE 14, 1911.

Petitions for injunction. Before Judge Bell. Floyd superior court. January 30, 1911.

*Maddox & Doyal* and *M. B. Eubanks,* for plaintiffs.

*Max Meyerhardt, J. Branham, Nathan Harris,* and *Lipscomb, Willingham & Wright,* for defendants.

LUMPKIN, J.   Lanham & Sons Company and Bosworth each filed an equitable petition against the City of Rome, seeking to enjoin against executions which had been issued against them and their lots respectively on account of a street improvement.   In each case the injunction was refused, and exception was taken. The cases were argued together in this court.

The grounds of attack by the plaintiffs may be summarized under the following general heads:   (1) That the act of the legislature under which the executions were issued was unconstitutional on account of defects in the record as to the method of its passage. (2) That the original act, as amended, was in violation of the fourteenth amendment of the constitution of the United States. (3) That the original and amended act were repealed by the subsequent act creating a new charter for the City of Rome.   (4) That there was a failure to comply with the act in regard to the methods of procedure, both before and after the work was done.   (5) That certain items included in the assessments were improper.

By the act of August 22, 1907 (Acts 1907, p. 897), the charter of the City of Rome was amended, and, among other things, provision was made in regard to grading, paving, and macadamizing the streets.   By the eighth section the board of public works was directed to cause a survey to be made of the streets, sewerage, and waterworks system, and to proceed as in the act set forth.   By the ninth section an assessment of one third of the cost of paving or macadamizing such a street was authorized to be made against the owners of abutting property, which should become a lien on such property, "to be enforced by execution issued as provided for collecting other city taxes."   By the act of August 11, 1908 (Acts 1908, p. 904), the charter of the City of Rome was again amended. It was provided, that, upon the completion of one or more sections of pavement, between intersecting streets, the board of public works should ascertain the proportionate cost chargeable to owners of abutting property, and certify this to the mayor and city council; that the latter should make an examination, and if the action were found correct, they should approve it, and cause the clerk to give written notice of the result to such owners of abutting property; that the amount so assessed should become immediately due and payable; that a copy of the notice should be served on the owner or occupant; and that the city should proceed immediately to collect

and pay over the money to the board of public works. It was also provided that if any owner of abutting property should desire to contest the amount of the assessment thereon, or the legality of any proceeding growing out of or connected with the pavement of the streets of the city, he might do so by means of an application for a writ of injunction, but that no temporary restraining order or permanent injunction should be granted unless and until such contestant should first pay' to the city the full amount admitted by him to be due, with interest thereon; and it was required that these facts should be fully stated in detail in the petition and verified by the applicant. On August 17, 1909, an act was approved the purpose of which was to amend, consolidate, and supersede the several acts incorporating the City of Rome and to create a new charter and municipal government therefor. Acts 1909, p. 1255. This included provisions in regard to the board of public works, the paving of streets, etc., of a generally similar nature to those in the former act, but declared that the previous acts were repealed. The method of contesting the amount of the assessment against abutting property or the legality of any proceeding growing out of or connected with the pavement of the streets, provided by the last-mentioned act, was by means of an affidavit of illegality, stating the cause of such illegality and the amount which the affiant admitted to be due. The amount so admitted was required to be paid to the levying officer before the affidavit should be received; and upon the filing of such affidavit it was to be returned to the superior court for trial. The work involved in the present controversy was done after the passage of the act of 1908, and upon the refusal to- pay the assessment executions were issued in May, 1909. In January, 1910, they were levied, and petitions were filed to enjoin further proceedings under them.

The objections made to the passage of the acts involved are concluded by the decisions in *De Loach* v. *Newton,* 134 *Ga.* 739 (68 S. E. 708), and *Atlantic Coast Line R. Co.* v. *State,* 135 *Ga.* 545 (69 S. E. 725).

The next question which arises is whether the act of 1907 (as amended by that of 1908) and the act of 1909 were void on the ground that they afforded no due process of law by which the owner of property abutting on a paved street might contest the amount and legality of the assessment. On behalf of the plaintiffs in

error it was contended that they did not do so, and that therefore such an assessment amounted to taking property without due process of law. In Londoner v. City and County of Denver, 210 U. S. 373, 385 (28 Sup. Ct. 708, 52 L. ed. 1103), referring to the assessment, apportionment, and collection of taxes, it was said that due process of law requires that at some stage of the proceedings before the tax becomes irrevocably fixed, the taxpayer shall have an opportunity to be heard, of which he must have notice, either personal or by publication, or by a law fixing the time and place of the hearing. In Hagar v. Reclamation District, etc., 111 U. S. 701 (4 Sup. Ct. 663, 28 L. ed. 569), it was said: "The law authorizing the imposition of a tax or assessment upon property according to its value does not infringe that provision of the fourteenth amendment to the constitution, which declares that no State shall deprive any person of property without due process of law, if the owner has an opportunity to question the validity or the amount of it, either before that amount is determined, or in subsequent proceedings for its collection." Winona & St. Peter Land Co. v. Minnesota, 159 U. S. 526, 537 (16 Sup. Ct. 83, 40 L. ed. 247); Kentucky Railroad Tax Cases, 115 U. S. 321, 331 (6 Sup. Ct. 57, 29 L. ed. 414). In McMillan v. Anderson, 95 U. S. 37 (24 L. ed. 335), it was held that a statute which gives a person against whom taxes are assessed a right to enjoin their collection, and have their validity judicially determined, afforded due process of law, notwithstanding he was required to give security in advance. The legislative act then under consideration authorized an injunction to stay the wrongful collection of a tax. It regulated the proceedings, and declared that they should be treated by the courts as preferred cases, and imposed a double tax upon a dissolution of the injunction. It was argued that this was not due process of law, because the judge granting the injunction was required to take security of the applicant, and that no remedial process could be within the meaning of the constitution which required such a bond as a condition precedent to its issue. Of this argument Mr. Justice Miller said: "It can hardly be necessary to answer an argument which excludes from the definition of due process of law all that numerous class of remedies in which, by the rules of the court or by legislative provisions, a party invoking the powers of a court of justice is required to give that security which is necessary

to prevent its process from being used to work gross injustice to another." If an assessment is not wholly unlawful, but only excessive, it does not deprive an owner of abutting property of due process of law for the act giving such remedy to require him to pay what he admits to be due in order to contest that part which he claims to be excessive. Such a requirement is recognized as a sound rule of equity. In National Bank *v.* Kimball, 103 U. S. 732, 733 (26 L. ed. 469), it was said that a person should not be permitted, because his tax is in excess of what is just and lawful, to screen himself from paying any tax at all until the precise amount which he ought to pay is ascertained by a court of equity. State Railroad Tax Cases, 92 U. S. 575 (23 L. ed. 663). Both the act of 1907, as amended by that of 1908, and the act of 1909 required notice of the assessment to be given to the owner of property abutting upon the paved street, and provided a legal method of contesting the legality of the proceedings and the amount of the assessment. Neither of them denied to the property owner due process of law in this respect. *Speer* v. *Mayor and Council of Athens,* 85 *Ga.* 49 (11 S. E. 802, 9 L. R. A. 402).

Counsel for plaintiff in error cited, in regard to what is known as the front-foot rule of assessment, the case of Norwood *v.* Baker, 172 U. S. 269 (19 Sup. Ct. 187, 43 L. ed. 443). That decision has been discussed by the Supreme Court of the United States in several other later cases. See French *v.* Barber Asphalt Paving Company, 181 U. S. 324 (21 Sup. Ct. 625, 45 L. ed. 879) ; Tonawanda *v.* Lyon, 181 U. S. 389 (21 Sup. Ct. 609, 45 L. ed. 908) ; Webster *v.* Fargo, 181 U. S. 394 (21 Sup. Ct. 623, 45 L. ed. 912) ; Cass Farm Co. *v.* Detroit, 181 U. S. 396 (21 Sup. Ct. 644, 45 L. ed. 914) ; Detroit *v.* Parker, 181 U. S. 399 (21 Sup. Ct. 624, 45 L. ed. 917) ; Wormley *v.* District of Columbia, 181 U. S. 402 (21 Sup. Ct. 609, 45 L. ed. 921) ; Shumate *v.* Heman, 181 U. S. 402 (21 Sup. Ct. 645, 45 L. ed. 922) ; Farrell *v.* West Chicago Park Commissioners, 181 U. S. 404 (21 Sup. Ct. 609, 45 L. ed. 924). It would not be profitable to enter into a discussion of the views entertained by the majority and minority of the court in those cases. It might not be amiss, however, to suggest that if the general rule is to allow assessment by the front foot, and the exception is only where such an assessment becomes confiscatory in character, whether wholly or partially so, it would seem that the person who seeks to bring

himself within the exceptional status ought to allege facts sufficient for that purpose. In the case at bar, as we have stated, the plaintiffs in error were afforded ample opportunity to contest the assessments either as to their amount or legality; and neither on the face of the statute nor in the pleadings or evidence was there anything to show that the assessment was confiscatory in character, either wholly or partially. Indeed, the Norwood case seems to have been put into the brief of the plaintiff in error rather suggestively and tentatively than as applicable to any substantial point made by the pleadings or evidence.

It was contended that the acts of 1907 and 1908 were repealed by that of 1909, and that this destroyed any right on the part of the city to collect executions issued prior to the passage of the last mentioned act. It has been said, that, as a general rule, the repeal of a statute without any reservation takes away all remedies given by the repealed statute. But where a new statute is a substantial re-enactment of an old one, and expressly recognizes and makes provision in regard to rights and remedies which accrued under it, the general rule is not applicable. Section 6 of the Civil Code of 1910 declares that "Laws looking only to the remedy or mode.of trial may apply to contracts, rights, and offenses entered into or accrued or committed prior to their passage; but in every case a reasonable time subsequent to the passage of the statute should be allowed for the citizen to enforce his contract, or protect his right." The act of 1909 did not merely repeal the prior acts and stop. It dealt with the same general subject-matter of the board of public works, and the pavement and improvement of streets, and in the same general manner. It made provision for the contest of the amount or legality of the assessment by means of an affidavit of illegality; and it recognized and substantially preserved the existing order of things. It expressly referred to executions issued under the act of 1907, and authorized their transfer. It declared that all the rights, powers, titles, property, easements, and hereditaments then belonging to the City of Rome should be vested in it under its new charter. Such an enactment did not destroy the right of the city to collect executions issued under the act of 1907, nor did it leave the owner of abutting property without a remedy to contest the amount or legality thereof.

The executions involved in these cases commanded that the city marshal should cause to be made the amount of the assessment, with interest, "of the goods, chattels, lands and tenements of [the named owner of abutting property], and especially of the property" abutting on the paved street, describing it. They were levied on the property of the plaintiffs so described. In the equitable petitions it was alleged that such executions were against the plaintiffs personally, as well as being made a special lien against the property abutting on the street which had been paved, "while, under the law, it could only be issued as a judgment in rem against the particular property abutting on said street so paved." By the expression "under the law" reference was doubtless made to the legislative act, and no attack was made upon the act itself in reference to this provision. This complaint was not referred to in the brief on behalf of the plaintiff in error, and will therefore be treated as abandoned. It is accordingly unnecessary to compare the provisions of the act with the fi. fa. issued under it.

As we have held that the acts of the legislature under which these proceedings were taken were not void for any of the reasons urged against them, and that the charter of the City of Rome furnished an ample remedy to the owner of an abutting lot to contest the amount of such assessment or the legality of the proceedings to levy and collect it, the present petitions, as brought, would not authorize an injunction. *Regenstein* v. *City of Atlanta*, 98 *Ga.* 167 (25 S. E. 428). We do not, therefore, deal with the numerous complaints made in regard to a failure by the city officials to comply with requirements of the act before and after the work was done. The injunction was properly refused in both cases.

*Judgment affirmed in each case. All the Justices concur.*