MITCHELL COUNTY *et al. v.* PHILLIPS *et al.; et vice versa.*

1. Where an election is held by a county to determine whether or not a debt for a given amount and purpose shall be created by the issuance of bonds for that amount, and the result of the election is in favor of the issuance of the bonds, and the bonds are validated in the manner prescribed by law, the fact that the county commissioners fail, during the first and second years after the authority is given to issue the bonds, to exercise it, does not have the effect of abrogating the authority to make the issue; and it is their duty to make provision for the payment of interest and principal, and, for the purpose of paying the latter, to create a sinking-fund by the assessment of a tax, which should be collected even during the years before the bonds are sold, in case of a delay in selling the bonds. But where such a delay is for a period of one, two, or more years, inasmuch as interest will not be paid during the years elapsing before the bonds are sold, no tax should be assessed and levied for such period of time.

2. Under the agreed statement of facts, the court did not err in refusing to enjoin the assessment of the tax upon the cotton which the plaintiffs in error contended was not theirs at the date upon which the liability for tax became fixed. Civil Code, § 4126; *Flannery* v. *Harley,* 117 *Ga.* 483 (48 S. E. 765).

3. It is the duty of the board of county tax assessors " to examine all the returns of both real and personal property of each taxpayer; and if in the opinion of the board any taxpayer has omitted from his returns any property that should be returned or has failed to return any of his property at a just and fair valuation, the said board shall correct such returns, and shall assess and fix the just and fair valuation to be placed on said property, and shall make a note thereof and attach the same to such returns." Park's Ann. Code, § 1116 (k). This provision of our statute relating to the duties of the board is not repealed by the act approved July 31, 1918 (Acts 1918, p. 232), relating to tax collections from delinquents.

4. The tax paid by the plaintiffs under the assessment and levy for the year 1919 for the purpose of paying interest on the bonds was not recoverable in this action, the same having been paid voluntarily and without protest, so far as the petition shows. *First National Bank of Americus* v. *Mayor etc. of Americus,* 68 *Ga.* 119 (45 Am. R. 476); *Hoke* v. *City of Atlanta,* 107 *Ga.* 416 (33 S. E. 412).

5. The question as to the legality of the increased assessment for the purpose of taxation of the property of the plaintiffs by the board of county tax assessors was decided adversely to the contention of the plaintiffs (who are plaintiffs in error in the cross-bill of exceptions) in the case of *Ogletree* v. *Woodward,* 150 *Ga.* 691 (105 S. E. 243); which this court declines to reverse upon a review made in accordance with a request of counsel for the plaintiffs. See also the case of *Washington Exchange Bank* v. *Barnett,* ante, 704 (111 S. E. 46).

Nos. 2612, 2613. FEBRUARY 18, 1922. REHEARING DENIED MARCH 1, 1922.

Injunction. Before Judge R. C. Bell. Mitchell superior court. March 29, 1921.

In May, 1919, the commissioners of roads and revenues of Mitchell County, by proper resolution, called an election for the voting of bonds for the grading and paving of the public roads of the county. At the election held the bonds carried, and, on August 2, 1919, were regularly validated by judgment of the superior court. In the resolution calling the election, in the notice of election, in the petition for the validation of the bonds, in the answer to the petition, and in the judgment of validation it was provided that the bonds when issued should bear date as of August 1, 1919 (one day before the judgment of validation was rendered), and that one hundred thousand dollars of principal should fall due August 1, 1939, one hundred thousand August 1, 1944, and the remaining two hundred thousand should mature August 1, 1949; all within thirty years from date of issue. On account of disturbed financial conditions and the inactivity of the bond market, the commissioners could not obtain a satisfactory offer for these bonds, although they made repeated efforts to sell them and were still offering them for sale, but none of them had been sold; in fact none had been issued. In pursuance of the provisions made for the payment of interest due on these bonds when issued, and the creation of a sinking-fund for the retirement of principal upon maturity, the commissioners levied a tax for this purpose in 1919, which was paid, and again in 1920, a portion of which was paid before this suit to restrain collection was brought. Mrs. J. H. Phillips and others brought their petition in equity in the superior court against Mitchell County, G. B. Baggs and others as the commissioners of roads and revenues of the county, L. L. Boyd, the tax-collector, C. D. Crow, the sheriff, and Jonah Palmer, the treasurer of the county, seeking to enjoin the defendants from collecting the taxes which had been levied against the property of the plaintiffs on account of the issue of $400,000 of bonds. The defendants were seeking to collect taxes on account of said bond issue, in the following amounts: Two and two-tenths mills on the dollar as a sinking-fund for the retiring of the bonds at maturity, and two and six-tenths mills as an interest and redemption fund to pay the interest as called for in the bond issue. As no part of the bond issue had ever been sold, the plaintiffs contended that the mere authorizing of an issuance of bonds could not be considered as a debt against the county

for which taxes could be levied and collected, and that the attempt on the part of the defendants to do so was without authority of law. The defendants filed their answer, in which they alleged that on account of the fact of the great stress in the money market of the world, and especially in this country, they had been unable to sell the bonds, but that they had tried often to do so and were still trying to sell them and expected to do so as soon as they could find a buyer who would offer a fair market price for them; that the bonds as validated should bear date of August 2, 1919, and bear interest at five per cent. from that date, said interest being payable semi-annually in August and February of each year; and that by reason of the dating of said bonds from August 2, 1919, they became a charge or debt against the county from date, on account of which fact taxes should be levied and collected to take care of the interest and retirement of the bonds and to provide a sinking-fund for the bonds.

The question as to whether or not a quantity of cotton in bales, stored in a designated warehouse, was taxable as the property of the plaintiffs, was also involved. It was conceded that if the plaintiffs were the owners of the cotton on the first day of January, 1920, the same was subject to taxation for that year; the plaintiffs denying that they were the owners of this property on that date. An agreed statement of facts was submitted for the consideration of the court, upon which the court was to determine the question just specified. That statement is as follows (omitting those parts of it which have already been sufficiently stated in substance): (1) "That the cotton that was, by the board of tax-equalizers of Mitchell County, assessed for taxes as the property of plaintiffs, was stored in the warehouse of the Georgia Manufacturing Company and had been there for some time, said cotton being deliverable to receipt only; that on the 31st day of December, 1919, a selling order was by the plaintiffs given to the Georgia Manufacturing Company, and that on the same date all receipts for said cotton were by the Bank of Camilla, with whom they had been deposited by plaintiffs as security for debt, turned over to the Georgia Manufacturing Company, which said company did on said date offer the same, with other cotton, for sale to the Georgia Cotton Company of Albany, which said offer was accepted, and the said Georgia Cotton Company did on said date

issue to the said Georgia Manufacturing Company its written confirmation of sale, which was as follows, to wit: Dated Albany, Ga., 12/31/19. " Messrs. Georgia Mfg. Co., Camilla, Ga. We confirm having bought from you this date per our usual terms of business, as follows: 700 b/c at 39 basis good middling. Yours very truly, Georgia Cotton Company, by I. S. Billingshea, Vice Pres." .(2) " That in the said transaction the Georgia Manufacturing Company was acting for and in behalf of the plaintiffs herein and the Bank of Camilla, and in making of said transactions, and all other transactions with reference thereto, the said Georgia Manufacturing Company was the authorized agent and representative of the said plaintiffs herein and the Bank of Camilla." (3) " That the said cotton was not actually shipped out of the warehouse of the Georgia Manufacturing Company to the Georgia Cotton Company until the 10th day of January, 1920, and settlement was not made for said cotton until January 10, 1920," (4) " It is further agreed that the plaintiffs had secured loans upon said cotton from the Bank of Camilla, representing almost the actual value of the same, and which said cotton, while in said warehouse of the said Georgia Manufacturing Company, was held subject to the liens thereon; that the proceeds from said sale were credited to the accounts of plaintiffs on the 10th day of January, 1920; that no money whatever was paid to two of the plaintiffs; and that if any money at all was paid to the other plaintiff, it was of an inconsequential amount." (5) " It is further agreed that if the plaintiffs were the owners of said cotton on the first day of January, 1920, the same was subject to taxation for the year 1920; but this agreement does not mean that the plaintiffs admit the ownership on that day, or that the said cotton was taxed in accordance with law." (6) " That the plaintiffs were by the board of equalizers of said county summoned to appear before them to answer such questions as might be asked by said board of tax-equalizers, and in conformity with the notice the plaintiffs did appear before said board, when the said board did examine them as to the ownership of said cotton, and at said time the plaintiffs denied ownership, but they were by said board adjudged to be the owners of said cotton on January 1, 1920, and subject to taxation therefor; that this notice was the only notice that the plaintiffs had with reference to the purpose or intention of said

board of tax-equalizers to assess said cotton for taxation. The plaintiffs did not demand arbitration." (7) "It is further admitted that the raising of the values as to all the property of said county by the said board of tax-equalizers was in accordance with the requirements of the tax commissioner of the State; and that the said board of tax-equalizers gave no notice whatsoever to any person or persons as to their intention to raise said valuations, and gave no notice as to said valuations actually having been raised. . ." (12) "That a tax of five mills for the payment of principal and interest on said bonds was levied and collected for the year 1919; that a tax of 4.8 mills was levied for the payment of principal and interest for the year 1920, a large portion of which said tax has actually been collected." (13) "That the entire tax levied for State and county purposes for the years 1919 and 1920 was $25.00 per thousand for each year."

Upon the hearing the court passed the following order: "It is ordered that all of the prayers for injunction be and the same are denied, except as to the collection of the tax of $2.60 per thousand dollars levied for the purpose of paying the interest on bonds and $2.20 per thousand dollars levied for the purpose of providing a sinking-fund for paying principal of bonds; these two items being shown in paragraph eight of plaintiffs' original petition. As to these items, it is ordered that the injunction be granted as prayed." To this order the defendants excepted, and assigned error on that part of the order granting an injunction against them as prayed for. The plaintiffs filed a cross-bill of exceptions, assigning error upon the refusal of the court to restrain the defendants from collecting the other items of tax set forth in the petition.

*J. J. Hill, A. S. Johnson,* and *E. E. Cox,* for plaintiffs in error in main bill of exceptions.

*M. A. Warren,* contra.

ATKINSON, J. (After stating the foregoing facts.)

1. We are of the opinion that under the evidence submitted to the court, the court properly enjoined the collection of the tax levied for the year 1920 to meet the payment of the interest coupons for that year. The bonds issued in pursuance of the authority given by the election and the validation of the bonds had not been issued and sold, and consequently no interest was

accruing upon these bonds and did not accrue in the years 1919 and 1920. The failure of the county authorities to issue the bonds and sell them in the years 1919 and 1920 did not have the effect to abrogate the authority, vested in them by the election and the validation of the bonds, to sell the bonds; and they might at some subsequent date put the bonds upon the market and sell them. But during the years 1919 and 1920 no sale was made, and no interest was accruing during those years; and the commissioners, if they should sell any in after years, would remove and destroy the coupons attached to the bonds representing the years which had elapsed before the sale was made, and they would not raise the interest to pay these coupons thus removed from the bonds. But the bonds were dated August 1, 1919; this had been fixed in 'the validation proceedings; and they would fall due August 1, 1949, and it was necessary that provision should be made 'for the payment of the principal of the bonds; and the collection of a tax for the purpose of creating a sinking-fund to meet the payment of the principal as it would fall due was in accordance with the law and was necessary in order to discharge the principal debt when it should fall due; and the court should not have enjoined the collection of that percentage of tax required for the creation of the sinking-fund for the purpose indicated. Consequently, the judgment of the court below granting the injunction is affirmed in part and reversed in part. It is affirmed in so far as it enjoins the collection of the tax for the years 1919 and 1920, intended for the payment of interest on the bonds during those years; and is reversed in so far as it enjoins the collection of the necessary amount to create the sinking-fund.

2-5. The rulings made in headnotes 2, 3, 4, and 5, read in connection with the accompanying statement of facts, dispose of all the other questions in the record not disposed of by the preceding part of the opinion.

*Judgment on the main bill of exceptions affirmed in part and reversed in part; judgment on the cross-bill affirmed. All the Justices concur.*