HARDIN, administrator, *v.* REYNOLDS, tax-collector, *et al.*

No. 12903.   NOVEMBER 20, 1939.   REHEARING DENIED DECEMBER 16, 1939.

*Hamilton McWhorter Jr., William D. Tutt,* and *Williams & Freeman,* for plaintiff.

*George B. Brooks, W. W. Armistead,* and *Erwin & Nix,* contra.

BELL, Justice. ■ The assessments were made under chapter 92-67 of the Code, which was taken from the act of July 31, 1918. Ga. L. 1918, p. 232. The pertinent provisions of this law are set forth in the Code, as follows:

§ 92-6701: "When the owner of property has omitted to return the same for taxation at the time and for the years the return should have been made, or having returned his property or part of same, has grossly undervalued the property returned, or his property has been assessed for taxation at a figure grossly below

its true value, such owner, or, if dead, his personal representative or representatives, shall return such property for taxation for each year he is delinquent, whether delinquency results from failure to return or from gross undervaluation, either by the delinquent or by assessors, said return to be made under the same laws, rules and regulations as existed during the year of said default, or the year in which said property was returned or assessed for taxation at figures grossly below its true value. . ."

§ 92-6702: "When such property is of that class which should be returned to the tax receiver of the county, the said tax receiver shall notify in writing such delinquent, or, if dead, his personal representative or representatives, of such delinquency, requiring that a return shall be made thereof within 20 days."

§ 92-6703: "If the delinquent or his personal representative or representatives, as provided under section 92-6702, refuses or fails to return such property after notice given him, the tax-receiver shall assess such property for taxation from the best information he can obtain as to its value for the years in default, and notify such delinquent of the valuation, which shall be final, unless the person so notified shall claim that it is excessive, in which event the further procedure shall be by petition in equity in the superior court of the county where such property is assessed. . ."

§ 92-6704: "If the delinquent or his personal representative or representatives, under section 92-6702, disputes the taxability of such property, he may raise that question by petition in equity in the superior court of the county where said property is assessed."

For convenience the foregoing law may sometimes be referred to in this opinion as the act of 1918. The plaintiff challenged its constitutionality, upon the asserted ground that since it fails to provide for a hearing before the making of assessments by the tax-receiver, it is repugnant to the due-process and equal-protection clauses of the State and Federal constitutions. The attack is without substance. The act does require that the tax-receiver shall give to the person claimed to be delinquent, or to his legal representative, twenty days' notice before the assessment is made; and although it does not afford a hearing before the tax-receiver, it further provides in effect that after assessment the person against whom it is made shall be given notice of the valuation, and he may then by petition in equity contest either the correctness of the

amount or the taxability of the property, the assessment not to become final until the filing and determination of such petition. The act is not invalid because it does not provide for a hearing before the entry of the assessment, in view of the requirement as to notices of such impending action, and of the receiver's valuation, and the further provision that the delinquent shall be heard in the manner prescribed, before the assessment shall be final and conclusive. It is sufficient if the delinquent has an opportunity to question the validity or the amount of the assessment, either before the amount is determined or in subsequent proceedings for collection. *Lanham* v. *Rome,* 136 *Ga.* 398 (3) (71 S. E. 770) ; *McGregor* v. *Hogan,* 153 *Ga.* 473 (112 S. E. 471) (affirmed, 263 U. S. 234, 44 Sup. Ct. 50, 68 L. ed. 282) ; *Coffin* v. *Bennett,* 164 *Ga.* 350 (138 S. E. 670) (affirmed, 277 U. S. 29, 48 Sup. Ct. 422, 72 L. ed. 768) ; *Pullman Co.* v. *Suttles,* 187 *Ga.* 217 (199 S. E. 821). Nothing to the contrary was decided in *Swinson* v. *Dublin,* 178 *Ga.* 323 (173 S. E. 93). Where a city charter provided for valuation of property by assessors for the purpose of taxation, and for appeal to the mayor and aldermen, by any dissatisfied taxpayer, it did not provide for any notice, either before or after the assessments by the assessors, in order that the taxpayer might take an appeal, if dissatisfied. Under such statute the property owner would not know that the assessment had been made, or that there was anything from which an appeal might be taken. The decision did not hold that notice and opportunity for hearing before the assessors were essential, regardless of the right of appeal; but its meaning is that the statute did not provide for notice, either before or after the assessment, in order that the purported right of appeal might be exercised. Compare *Savannah &c. Ry. Co.* v. *Savannah,* 96 *Ga.* 680 (2) (23 S. E. 847). The decision in *Richards* v. *Zentner,* 176 *Ga.* 222 (167 S. E. 516), did not deal with the constitutionality of a statute, but involved increase of valuations above returns made, without notice and hearing as provided by law.

Nor is the present case like *Mott* v. *Georgia State Board of Examiners,* 148 *Ga.* 55 (2) (95 S. E. 867), in which it was held that "The provision in the act for an appeal to the superior court after the board has rendered judgment of condemnation is not a compliance with the mandate of the constitution." Mott was an op-

tometrist who had been engaged continuously in the practice of his profession for at least two years before the passage of the act establishing the board of examiners. He applied for license, but his application was refused without notice or hearing. The statute was construed by this court as not providing for such notice or hearing in case of an applicant who "shall have been guilty of grossly unprofessional and dishonest conduct," and the refusal, it appeared, was based upon this ground. The law thus permitted denial of the plaintiff's right to *continue in the profession in which he was already engaged,* pending an appeal and trial in the superior court. For the time being, it took from him a right which he already had, and that without notice or hearing; whereas under the act of 1918 a property owner can be deprived of nothing until he is given notice and full opportunity for hearing in the superior court. To the same effect see *State Board of Medical Examiners* v. *Lewis,* 149 *Ga.* 716 (102 S. E. 24). With further reference to city charters which do not expressly or affirmatively provide for notice and hearing, see *Savannah &c. Ry. Co.* v. *Savannah,* 96 *Ga.* 680 (supra) ; *McWilliams* v. *Tallapoosa,* 137 *Ga.* 283 (73 S. E. 510) ; *Simmons* v. *Newton,* 178 *Ga.* 806 (174 S. E. 703).

It is insisted by the plaintiff that he is not afforded due process, for the reason that, as stated in *City Council of Augusta* v. *Pearce,* 79 *Ga.* 98 (4 S. E. 104), a court of equity is an unfit instrument to assess taxes or to supervise assessments upon the naked question of value. That decision, of course, was rendered before the passage of the act of 1918, supra, providing for a suit in equity for the purposes stated therein; although even under this statute the court does not make the assessment, but will merely enjoin collection of the excess, if any, under the principle of equal protection, or prevent a sale if the property is not taxable. Callaway v. Bohler, 291 Fed. 243 (9), 250; s. c. Bohler v. Callaway, 267 U. S. 479 (3), 487 (45 Sup. Ct. 431, 69 L. ed. 745) ; Folsom v. Bank of Greenwood, 97 Fla. 426 (120 So. 317).

■ It was held in *Mitchell County* v. *Phillips,* 152 *Ga.* 787 (3) (111 S. E. 374), that the act of 1918, supra, did not *repeal* the tax-equalization act of 1913 (Ga. L. 1913, p. 123, Code, §§ 92-6901-92-6917) ; but if it was the intent of the former statute that assessments made thereunder, or acceptance of incomplete returns, should be final, in the absence of arbitration, then the act of 1918

did by implication *amend* that law to the extent of providing that such matters shall be open for further consideration by the taxing authorities in case of omitted property or of a gross undervaluation or assessment. The present proceeding was based upon a failure to return, and not on gross undervaluation or assessment. The fact that the assessors did not require return of this property, even if they considered the matter ,with the owner, did not excuse non-compliance with the act of 1918. Whether or not, after an appeal to *arbitrators* and determination of value by them, in pursuance of the act of 1913, a tax-receiver might still be permitted to question such valuation under the later act, is not for decision in the present case. This is true for the reason that the auditor found, upon sufficient evidence, that there was no arbitration for either of the years in question, but that there was an actual failure to return; and his findings against the plaintiff were based on such omission. The tax-receiver proceeded under the act of 1918, and the act of 1913 is inapplicable.

■ As we have just stated, the assessments made by the tax-receiver for the years 1928 and 1929, so far as here material, related to unreturned "cash on deposit, notes, and accounts," and not to an undervaluation of the same. The plaintiff contended that all money, notes, and accounts had been returned for taxation as required by law, and should not be again assessed or taxed. In *Douglas* v. *McCurdy, 154 Ga.* 814 (115 S. E. 658), it was said that if a taxpayer has $10,000 in money and returns only $500 as all of his money, he is a defaulter as to $9500, in that he failed to return this amount; and that if he has notes of the value of $15,000 and returns notes in the amount of $1000, he is in like manner a defaulter in the sum of $14,000. In each of these instances there would be an omission to return, and not a mere undervaluation. Under the principle thus ruled, the evidence authorized the finding of the auditor that there was an omission by the taxpayer and the administrator respectively to return money, notes, and accounts for the years 1928 and 1929 in the amounts stated in the auditor's report. In fact there was an agreed stipulation that on January 1, 1928, the intestate had money, notes, and accounts of the fair market value of $68,000, and that on January 1, 1929, there were money, notes, and accounts of the fair market value of $78,000 in the hands of the administrator. According to such evi-

dence and findings, the tax-receiver was authorized to proceed under the act of 1918 as for a failure to return property subject to taxation.

■ The assessments made by the tax-receiver upon unreturned money, notes, and accounts were based upon full valuation. After ascertaining the amount which had been so unreturned, the auditor further found that the plaintiff should be held liable for taxes only upon 60 per cent. of the total value, in view of a custom which he found to exist that property in Oglethorpe County was taxed at only 60 per cent. of its market value. It is contended by the plaintiff that there was no evidence to sustain the finding as to such custom, but that, so far as any custom existed, it was to tax tangible property at from 30 to 60 per cent. of its value, and to tax intangibles, such as money, notes, and accounts, at only a nominal valuation, or not to tax them at all. The plaintiff thus seeks an application of the rule that where the taxing authorities *intentionally and systematically* assess property for taxation at less than its full value, the taxpayer is entitled to have the assessment on his property reduced to the same proportion of value that is applied generally to similar property. See *City of Moultrie* v. *Moultrie Banking Co.*, 177 *Ga.* 714 (3) (171 S. E. 131); *Mayor &c. of Savannah* v. *Fawcett*, 186 *Ga.* 132, 136 (197 S. E. 253); Yakima Valley Bank v. Yakima County, 149 Wash. 552 (271 Pac. 820); Spokane & Eastern Trust Co. v. Spokane County, 70 Wash. 48 (126 Pac. 54, Ann. Cas. 1914B, 641); Coombes v. Coral Gables, 124 Fla. 374 (168 So. 524); Cummings v. Merchants National Bank of Toledo, 101 U. S. 153 (25 L. ed. 903); Stanley v. Albany County Board of Supervisors, 121 U. S. 535 (7 Sup. Ct. 1234, 30 L. ed. 1000); West Penn Power Co. v. Board of Review, 112 W. Va. 442 (164 S. E. 862); Cen. R. Co. v. Martin, 65 Fed. (2d) 613; Taylor v. Louisville &c. R. Co., 88 Fed. 350; Booneville National Bank v. Schlotzhauer, 317 Mo. 1298 (298 S. W. 732, 55 A. L. R. 489); Folsom v. Bank of Greenwood, 97 Fla. 426 (120 So. 317). The present case does not call for an application of the rule stated. This is true for the reason that the burden is upon the taxpayer to establish by competent evidence the alleged intentional and systematic undervaluation or non-taxation; and the evidence did not demand, even if it might have authorized, a finding of such in the instant case. As to burden of proof, see Aberdeen Bank v. Che-

halis Co., 166 U. S. 440 (17 Sup. Ct. 629, 41 L. ed. 1069) ; Amos-keag Savings Bank v. Purdy, 231 U. S. 373 (34 Sup. Ct. 114, 58 L. ed. 274) ; Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350 (38 Sup. Ct. 495, 62 L. ed. 1154) ; Chicago Great Western Railway Co. v. Kendall, 266 U. S. 94 (45 Sup. Ct. 55, 69 L. ed. 183) ; Callaway v. Bohler, 291 Fed. 243, 251-2; Bohler v. Callaway, 267 U. S. 479, 489-90 (45 Sup. Ct. 431, 69 L. ed. 745) ; Folsom v. Bank of Greenwood, 97 Fla. 426 (3), 429-30 (120 So. 317). It is true there was evidence to show that very little property of the kind here under consideration was returned during the years in question, and that the amount was gradually decreasing from year to year; but there was no evidence that any person besides the plaintiff and his intestate had failed to return property of this class which should have been returned, or that any property was habitually accepted by the taxing authorities at any particular percentage below the 60 per cent. valuation referred to by the auditor. The court could not know, without proof, the quantity of personalty that ought to have been returned in the county; nor would a mere difference, however great, between the amount of the returns on intangibles and the amount of other classes of property establish an intentional and systematic policy of any kind on the part of the taxing authorities. Compare *Georgia Railroad &c. Co.* v. *Wright,* 125 *Ga.* 589 (16) (54 S. E. 52). Nor would mere defaults by others serve as an excuse for the plaintiff.

The auditor, however, excluded some evidence which, it is contended, would have tended to show a discrimination against the plaintiff in reference to the assessments under investigation. He excluded from evidence the following extract from a pamphlet purporting to be a discussion of Georgia problems by a citizen of this State: "Georgia's estimated wealth is $4,420,000,000, according to the bulletin of the National Industrial Conference Board, issued February 25, 1930. Fully one half of this was classed as intangible property. Only the merest fraction of intangibles gets on the tax digest. The amount is steadily decreasing. It was greater in 1910 than in 1928, by $4,247,000. In 1875 it was 14.5% of the total taxable wealth; in 1928 it had dropped to 3.4%." The auditor did not err in excluding this statement. In the first place, the evidence was hearsay. In the second place, it did not relate to any specific condition in Oglethorpe County at any time, and

did not tend to show the existence of any intentional and systematic policy with regard to the taxation of any class of property of that county. The auditor also excluded from evidence a written statement by the cashier of a bank in the county, showing the total deposits on the first days of January in each of several years beginning with the year 1930. According to the statement, the deposits amounted to something more than $70,000 on January 1 of that year, but thereafter dropped continuously for two or three years, and then increased progressively for several years. The auditor did not err in excluding this statement. Regardless of the fact that the statement referred only to years subsequent to those for which the contested assessments were made, there was nothing to show the residence of the depositors, nor did the statement as a whole tend to show any fixed policy on the part of the taxing authorities as to assessments of money in Oglethorpe County. Still other evidence was rejected by the auditor, but none of it tended more directly to establish the alleged discrimination than the proffered evidence to which reference has just been made, and the auditor did not err in excluding it.

Even if the auditor may have been incorrect in his finding that property in the county was generally returned or assessed at 60 per cent. of its market value, the plaintiff could not complain, where he was allowed the advantage of such percentage, and did not establish his contention that money, notes, and accounts were intentionally and systematically assessed at a still lower valuation. As to alleged discrimination, the court did not err in overruling the exceptions of law and of fact to the auditor's report, or in confirming the report.

■ Although the executions issued upon the assessments as made by the tax-receiver were levied on property described as that of the plaintiff's intestate, and no effort appears to have been made to hold the plaintiff administrator personally liable, he nevertheless amended his petition so as to seek relief from personal liability. Evidence was heard in regard to the issue, and a finding was made upon it. It appeared from the evidence that the administrator had distributed the estate to the sole heir at law, with the exception of a balance which might be insufficient to satisfy the extra claim for taxes, so far as it was found to be just by the auditor. The auditor reported, however, as a finding of fact, that at

the time of making such distribution the plaintiff had knowledge that in 1928 his intestate had omitted making return of a large portion of money, notes, and accounts as of January 1, 1928, or had grossly undervalued the same, and that he had similar knowledge with respect to the return which he himself made for the year 1929. In these circumstances the plaintiff would not be relieved from liability, although he may have given notice to creditors in pursuance of law (Code, § 113-1505), and the present claim for taxes was not asserted, or brought to the attention of the plaintiff by any taxing official until after such distribution. If the plaintiff, as administrator, had knowledge of such tax liability, he distributed the estate at his peril, and it is immaterial that the claim for taxes was not asserted within the time fixed by law after notice by the administrator to creditors, or before such distribution. *Allen* v. *Confederate Publishing Co.*, 121 *Ga.* 773 (2) (49 S. E. 782); *Stokes* v. *Robertson,* 143 *Ga.* 721 (5) (85 S. E. 895). The evidence authorized the finding of fact as made by the auditor upon the issue of knowledge, and he did not err in his conclusion of law that the plaintiff should not be relieved from personal liability.

The plaintiff excepted to rulings of the auditor excluding evidence tending to show his good faith in failing to make a return of the omitted property for the years in question. There was no error in excluding this evidence. The plaintiff's good faith would neither excuse a failure in this respect; nor relieve him from personal liability, if he had knowledge of the facts before making distribution.

■ It is contended that the notices given by the tax-receiver did not specify any particular intangible property that had not been returned as required by law. The language of the notice as to this class of property as related to the year 1928 was as follows: "certain stocks, cash on deposit, notes and accounts, fi. fas., and other choses in action." The notice as to the same class of property for 1929 was: "stocks, cash on deposit, notes and accounts, fi. fas., and other choses in action, and said personalty being in your hands to be administered at the time when the same should have been returned for taxation." The tax-receiver was proceeding under the act of 1918, the language of which is quoted above. The act relates to property which the owner has omitted to return, or which has been grossly undervalued by him, or assessed at a figure grossly

below its value. The act further provides that the owner of any such property shall return the same for taxation for each year he is delinquent (Code, § 92-6701), and that "when such property is of that class which should be returned to the tax-receiver of the county," the said tax-receiver shall give notice "of such delinquency, requiring that a return shall be made thereof within 20 days." Code, § 92-6702. It will be seen that the statute makes it the duty of the delinquent or his legal representative to make a proper return of such omitted or undervalued property without notice, and that the provision as to notice is merely a step in the procedure for enforcing the duty if it is not voluntarily performed. The statute makes no requirement as to specification of property; and since it is the duty of an owner or his representative to return all of such property even without notice, and since the tax-receiver is not presumed to have an acquaintance with the property such as the owner or his legal representative would have, particularity of description in the notice given by such officer is unnecessary. The descriptions contained in the notices given by the tax-receiver in this case were sufficient to put the machinery of the law in operation, and to require the plaintiff to make proper returns, in default of which the tax-receiver would proceed as provided in § 92-6703. It follows that the assessments as made were not illegal for want of a sufficient description in the notices.

■ There is no merit in the contention that the executions could not issue until the assessments became final and conclusive by the procedure provided by the act of 1918. Cf. *Coffin* v. *Bennett,* 164 *Ga.* 350 (138 S. E. 670). It is true that the act referred to contained no provision for issuance of execution by the tax-collector; but when this property was assessed by the tax-receiver, it was the duty of the tax-collector, under other laws, to proceed to collect the tax by issuing executions based upon the assessments, subject to the right of the defendant in execution to arrest the process by a suit in equity as provided by the statute. *Georgia Railroad &c. Co.* v. *Hutchinson,* 125 *Ga.* 762 (3), 770 (54 S. E. 725).

■ The executions included interest from December 20 of each year respectively. The auditor, after determining the amount of the money, notes, and accounts which had not been returned for each of these years, found that the plaintiff was liable for taxation upon 60 per cent. of their value, and that the amount of the

tax thus ascertained should bear interest at the rate of 7 per cent. from December in the year in which the liability arose. He reported as conclusions of law that the executions should proceed for these amounts, but should be enjoined as to the excess. It is contended that the plaintiff should not have been charged with interest before the date of the assessments. There is no merit in this contention. The Code, § 92-7601, declares that all executions issued for taxes by the State or any county thereof shall bear interest at the rate of 7 per cent. per annum from the time fixed by law for issuing the same. The time fixed by law is December 20 in each year. § 92-5102. Each execution was properly made to bear interest from December 20 of the year for which it was issued, although the assessments were not made, and the executions were not issued, until the year 1935. *Central Railroad &c. Co.* v. *Wright,* 124 *Ga.* 596 (14), 618 (53 S. E. 251); *Georgia Railroad &c. Co.* v. *Wright,* 125 *Ga.* 589 (21) (54 S. E. 52). In the latter case it was said that *only executions* bear interest; and that if a taxpayer tenders the amount of the tax due by him before execution is actually issued, no interest on the tax can lawfully be required of him, even though the taxes are past due. There was no tender in the present case. It may be remarked, however, that for the purpose of remedying the situation referred to in that decision the legislature, in 1917, passed an act providing that all taxes due the State or any county, remaining unpaid after December 20, shall bear interest at the rate of 7 per cent. per annum from said date, and that the tax-collectors shall collect the interest on such unpaid taxes and account for same in their final settlements. Ga. L. 1917, p. 197; Code, § 92-5001.

The plaintiff insists that the present claims for taxes were not liquidated, since they did not become final and conclusive until judgment in the equity suit instituted by him; and that the act of 1917 should be construed as applying only to taxes accruing upon regular returns, and not to taxes based on assessments which may be subject to contest under the act of 1918. We can not concur in the contentions in regard to interest. It was found on sufficient evidence that taxes in stated amounts were due by the plaintiff on unreturned property for the years 1928 and 1929. The taxes were due on December 20 in each of these years respectively, and collection was merely delayed because the property was not

returned. The auditor's findings as to interest were correct, and the trial judge properly so held.

■ There was no merit in any of the exceptions of law or fact to the auditor's report. The court did not err in overruling all of such exceptions, and in entering a decree in accordance with such report. *Judgment affirmed. All the Justices concur.*

ON MOTION FOR REHEARING.

BELL, Justice. After due consideration of the motion for re- hearing and the briefs filed in support of it, we are unable to dis- cover any basis in law for a different decision. We deem it un- necessary to discuss separately the grounds of the motion, but will observe that much that is said with respect to the act of 1918 would seem to relate more to the policy or wisdom of the law than to its constitutionality, or even as to its effect upon the prior act of 1913. It is urged, among other things, that the act of 1918 places an unreasonable hardship upon taxpayers, in that even the good citizen, who has made what he thinks was a fair return of his property and what has been accepted as such by the assessors, is nevertheless subject to further demands for the period of seven years, and that there is always this period behind him as to which his liability is unsettled. It is stated also that executors, admin- istrators, and trustees can never be safe in settling with heirs or beneficiaries so long as there is even one year as to which the lia- bility has not been adjudicated in the manner prescribed by the act of 1918 or by arbitration under the act of 1913, and that settle- ments will be unduly prolonged. It is further urged that the proviso as to property "in the hands of an innocent holder with- out notice" (Code, § 92-6701) does not with certainty protect a purchaser, because there will necessarily remain the question of fact as to notice. In view of all which, it is suggested, trade and commerce will be restrained, and taxpayers may even adopt the practice of so undervaluing their returned property as to open the way for arbitration or litigation for the purpose of adjudicating liability.

All of these conditions, so far as they may exist, are matters of policy; and the remedy, if one is needed, can only come from the lawmaking body. None of the conditions stated would justify this court in holding the act of 1918 invalid, or in reaching a dif- ferent conclusion as to its effect and application in the instant

case. The present case does not call for a construction of the proviso as to innocent purchasers; and, as indicated in the original opinion, no ruling is now made as to whether an arbitration under the act of 1913 could be affected by a proceeding under the act of 1918.

Some of the grounds of the motion refer to contentions not made either in the original petition or in amendments thereto; and for this reason, if not for others, they are without merit.

*Rehearing denied. All the Justices concur.*