SUTTLES, tax-collector, *et al. v.* MONTGOMERY.

No. 13864. November 12, 1941.

*Spalding, Sibley, Troutman & Brock, E. H. Sheats, W. S. Northcutt,* and *Standish Thompson,* for plaintiffs in error.

*Hirsch, Smith, Kilpatrick, Clay & Cody,* contra.

REID, Chief Justice. The nature of this case may be seen from an examination of the opinion rendered when it was here on review of a judgment on interlocutory hearing. *Montgomery* v. *Suttles,* 191 *Ga.* 781 (13 S. E. 2d, 781). The present exception is to the final decree entered by the judge, who by consent passed upon the law and facts, and held that the plaintiff was entitled to an injunction as prayed.

At the trial the evidence was the same as upon interlocutory hearing (in fact the brief of evidence from that hearing was used), except that a stipulation was entered into between the parties and considered by the court. This stipulation made no important

change in what had otherwise been before the court, so far as concerns what we regard as the main and controlling question in the case. Prior to the final trial there had been some controversy as to the values or percentages of value at which various classes of property were assessed by the county authorities for taxation. The stipulation brought out the whole tax digest, and showed the total amount of every class of property assessed and the percentage of its true value upon which the assessments were made. It showed also the amount and percentage of property voluntarily returned by the taxpayers and the percentages of its true value at which such returns were accepted. From this it appears without dispute that stocks and bonds returned for taxation amounting in the aggregate (at the percentage of true value accepted) to $13,439,225.00 were taxed upon the basis of 15 per cent. of their market value, this method being uniform and systematic. It further appeared that the general practice was to assess real estate at 60 per cent. of its value, cash at 5 per cent. and mortgages at 25 per cent. It was also stipulated that in December, 1937, the authorities issued assessments aggregating $6,690,255.00 against other persons alleged to hold stocks and bonds unreturned, and that these assessments were made upon the basis of 60 per cent. of their market value.

The answer of the tax-collector was twice amended, chiefly to incorporate the newly stipulated facts and to present a contention which in substance we take to mean that the court should examine the tax assessments as a whole and arrive at an average or common level, considering all kinds of property and the respective percentages of its value used for taxation, and declare upon this basis what would be a fair or proper assessment of the plaintiff's property. The trial judge entered a decree enjoining collection of the taxes above percentage of value assessed against other property of like kind. Counsel have presented this contention with much force and industry, and have made a calculation as to the percentage of market value of his stocks upon which the plaintiff should be assessed. They use the formula for this calculation illustrated by Judge Taft for the Sixth Circuit Court of Appeals, in Taylor v. L. & N. R. Co., 88 Fed. 350. It of course is the law of the case under our prior adjudication that the plaintiff is entitled to arrest the tax execution where the proof shows that he is denied the equal protection of the law by a process of systematic discrimination on the

part of the administrative tax authorities, resulting in assessments against his property at substantially higher values than were applied to others of the same class, for in the former opinion it was said: "It is palpable that inequality results from assessment of property at a fractional per cent. of its true value as compared with assessment of other similar property at a substantially lower percentage of its true value. The principle applies to the instant case, where the assessment against the property of the plaintiff (shares of corporate stock in a private corporation) was at fifty per cent. of its true value, while like property of other persons was systematically assessed at fifteen per cent. of its true value. The discrimination would not be more patent had the assessors intentionally and systematically excluded from assessment all intangible properties except those of the complainant, but assessing his intangibles at fifty per cent. of its true value. Such administration by the officials comes within the inhibition of the equal-protection clause of the 14th amendment to the Federal constitution. The principle seems to have been recognized in *Mayor &c. of Savannah* v. *Fawcett,* 186 *Ga.* 132 [197 S. E. 253], and *Hardin* v. *Reynolds,* 189 *Ga.* 534 (6 S. E. 2d, 328), though not expressly ruled on in either case. The case differs on its facts from Nashville, Chattanooga & St. Louis Railway *v.* Browning, 310 U. S. 362, 368 (60 Sup. Ct. 968, 84 L. ed. 1254), distinguishing the above cited cases. As the inequality complained of in the present case relates to assessments of shares of corporate stock whereby the stocks of complainant are assessed at fifty per cent. of their true value, whereas the great mass of shares of corporate stock of other persons are systematically assessed at only fifteen per cent. of the market value, the ruling in *Verdery* v. *Summerville,* 82 *Ga.* 138 (8 S. E. 213), supports rather than militates against the above ruling."

Nor can we accept the theory that in this proceeding some new and equitable assessment can be made. It must be remembered that this proceeding in equity is based on the rights accorded to petitioner under the equal-protection clause of the constitution. It is not one to test the validity of the system of tax-assessments employed by the county, except as it may be necessary to consider them in arriving at the answer to the precise question, to wit: Is the plaintiff being denied the equal protection of the laws, guaranteed to him by the constitution? We might well say, as did the

Supreme Court in Greene *v.* L. & I. R. Co., 244 U. S. 499, 501 (37 Sup. Ct. 673, 61 L. ed. 1280, Ann. Cas. 1917E, 88), that "the duty to assess at full value is not supreme but yields to the duty to avoid discrimination." Such reasoning serves to illustrate the true character and function of the present proceeding and of the particular question upon which we here adjudicate. Again we say that the question is not what the proper assessment would have been against Mr. Montgomery for the year involved, but rather, did the one actually made, by reason of the discrimination shown, result in depriving him of the equal protection of the laws? So also in Bohler *v.* Callaway, 267 U. S. 479, 487 (45 Sup. Ct. 431, 69 L. ed. 745), it was pointed out that the only function of the bill (in the Federal court) in that case was to obtain relief by injunction, it being said: "Nothing indicates that the court was to make administrative assessment. It was only to enjoin excessive assessment." The situation is simply this: The law requires that all property for the purpose of taxation shall be assessed at its true value. Code, §§ 2-5001, 92-5701, 92-5702. It establishes a scheme of administrative machinery to bring this about. § 92-6901 et seq. The record in the instant case shows that no property was so assessed. It also shows that it was not assessed uniformly (Code, § 2-5001), but was in actual practice classified, whereas, as the law then stood (*Verdery* v. *Summerville,* supra), there was no provision for classification, such as now. Ga. L. Ex. Sess. 1937-38, pp. 156-170, Code Ann. (1939 Supp.), § 92-113 et seq. The record shows also that even in the so-called different classes or species of property uniformity did not prevail, for the plaintiff's stock was assessed at fifty per cent. of its value and under the general system employed all or substantially all other similar property was assessed at fifteen per cent. The plaintiff offered to pay on that basis; and when we hold, as we do, that no more can be exacted of him, we do not adjudicate as to any other of the sundry questions growing out of the dilemma dealt with by the tax authorities under such a system; nor is it necessary to determine whether the plaintiff asked for less in his petition than he might be entitled to. He has offered to pay what others of the same class did. This may not harmonize the administration of the tax laws, but it is equal protection under the law. Although we have examined them carefully, we do not here cite or deal specially with many cases cited

on the briefs of counsel; for the reason that the main question has been settled on the former appearance of the case, and many of these cases were there cited or dealt with.

*Judgment affirmed. All the Justices concur.*