### CALLAWAY v. BOHLER, Tax Collector, et al.

(District Court, S. D. Georgia. June 25, 1923.)

1. **Courts ☞99(1)—Grant of temporary injunction held to establish jurisdiction as the law of the case.**

In suit to enjoin enforcement of executions for taxes on grounds, among others, that stock in national banks outside the state was wrongly assessed, and that assessment was excessive and discriminatory, grant of injunction restraining collection of taxes on bank stock and preserving status until full inquiry could be had *held* to establish jurisdiction of federal court as the law of the case.

2. **Courts ☞262(4)—Federal court held to have jurisdiction of suit to enjoin enforcement of tax executions.**

In view of Rev. St. § 5219 (Comp. St. § 9784), federal court *held* to have jurisdiction of suit to enjoin enforcement of executions for taxes on grounds, among others, that assessment was excessive and discriminatory, and covered stock in national banks outside the state.

3. **Courts ☞263—Federal jurisdiction, when existing, extends to all questions.**

When federal jurisdiction exists, it extends to determination of all questions presented, irrespective of disposition made of the federal questions.

4. **Judgment ☞654—Denying injunction against arbitration and dismissing bill not conclusive that award valid.**

Judgments denying an injunction against arbitration proceedings between taxpayer and tax officials, and dismissing bill, *held* not conclusive that award was valid, where Supreme Court, in affirming the judgments, evidently considered the entire arbitration void, and the judgments were consistent with that view.

5. **Taxation ☞452—Statute held constitutional and to repeal earlier act.**

Acts Ga. 1918, p. 232, providing for assessment of property which owner has omitted to return for taxation or has grossly undervalued, and for review of question of excessiveness by petition in equity in superior court, *held* constitutional, and to repeal Acts Ga. 1910, p. 22, providing method of assessing and collecting taxes, where no other adequate provision is made and authorizing taxpayer to have arbitration of the question of value.

6. **Statutes ☞161(1)—Repealed by implication when subsequent statute covers same subject-matter and operates as substitute for earlier act.**

When statute is manifestly intended to cover subject-matter of former statute and operate as substitute for it, the former statute is repealed by implication.

7. **Constitutional law ☞284(1)—Statute authorizing taxpayer to raise question of excessiveness of assessment provides due process.**

Acts Ga. 1918, p. 232, providing for assessment of property omitted or grossly undervalued by owner, and providing that, if taxpayer raises question of excessiveness, further proceedings shall be by petition in equity in the superior court, provides due process of law.

8. **Constitutional law ☞229(3)—Different remedies of taxpayers making returns to different officials held justified.**

The provisions of Acts Ga. 1918, p. 232, relative to assessment of property omitted or grossly undervalued by owner, for different remedies for those making returns to the comptroller and those making returns to tax receivers, *held* justified under doctrine of right to classify.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**9. Taxation ⊝⇒498—Reviewing court not to make assessment, but only to determine whether assessment excessive.**

Acts Ga. 1918, p. 232, providing for assessment of property omitted or grossly undervalued by owner, and for proceedings by petition in equity in superior court, when question of excessiveness is raised, does not contemplate that court of equity shall assess for taxation, but only determine the issue of excessiveness.

**10. Taxation ⊝⇒611(6)—Tax receiver competent to testify concerning assessment of property.**

In suit to enjoin enforcement of execution for taxes on ground that assessment is excessive and discriminatory, tax receiver is competent to testify to percentages at which property has been assessed, and as to assessments of similar property against others and absence of effort to assess others for back taxes, though tending to invalidate assessment made by him.

**11. Taxation ⊝⇒608(5)—Discrimination in assessment enjoined.**

Assessment of stocks and bonds belonging to an estate for taxation at true market value, where other similar property was assessed at only a fraction of its value, or not at all, is a discrimination, against which relief will be granted by injunction.

**12. Taxation ⊝⇒610—Tender on condition that it was in full payment, not accepted, does not stop running of interest.**

Taxpayer, claiming that assessment was discriminatory and excessive, should have paid without condition the taxes actually owing, and where amount thereof was tendered on condition that it was in full payment, and not accepted, interest was chargeable until unconditional payment was subsequently made.

In Equity. Suit by E. H. Callaway, as executor of the estate of J. B. White, against Chas. S. Bohler, Tax Collector of Richmond County, Ga., and others. Injunction granted.

Callaway & Howard, of Augusta, Ga., for complainant.

George M. Napier, Atty. Gen., of Atlanta, Ga., and Pierce Bros., A. L. Franklin, and Wm. K. Miller, all of Augusta, Ga., for respondents.

BARRETT, District Judge. J. B. White came to Richmond county in 1866, and resided there continuously until 1909, in which year he went to travel in Europe, and died at Genoa, Italy, in March, 1917, leaving a will in which he described himself as of Richmond county, Ga., and in which he named as executor E. H. Callaway, of said county. Such executor probated the will in said county as a domestic will. White was never naturalized as a citizen of the United States. Such executor filed an inventory, in which were included various stocks and bonds in corporations foreign to Georgia, and which were physically in the possession of Henry Clews & Co. of New York. During the years 1911 to 1917, inclusive, White returned his real estate for taxation, and $300 of household and kitchen furniture, but no other personal property. Subsequent to the death of White the tax receiver of Richmond county demanded of such executor returns for taxation during the years 1911–1917, inclusive, of the said stocks and bonds. The executor insisted that they were not liable for taxation in Richmond county, and the tax receiver withdrew his demand. Thereafter Richmond county petitioned for a mandamus against said receiver to

⊝⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

compel him to assess said stocks and bonds, and sought to make such executor a party. The court declined to make the executor a party, but allowed opportunity for taking the depositions of a member of the firm of Clews & Co.

Such testimony was taken, and revealed that there was held by Clews & Co. for said White stocks and bonds in such foreign corporations of the following values for the respective years: For 1911, $1,012,366.-67; for 1912, $1,397,671.67; for 1913, $1,344,405.83; for 1914, $1,-556,915.83; for 1915, $1,443,543.83; for 1916, $1,508,436; for 1917, $1,375,408.50—and further that there should be added to each amount for each year above given two notes, aggregating the sum of $12,000, and the further aggregate amount of $195,152.19 for the year 1917, covering other stocks in foreign corporations and notes and loans for that year. Included in these were 115 shares of the capital stock of the National Park Bank of New York and 100 shares of the National Bank of Commerce of New York, aggregating from $57,000 to $99,000. These notes and bonds had never been in the name of White, but were always in the name of Clews & Co. White paid Clews & Co. on account from time to time, leaving owing by White to Clews & Co. on the 1st of January of each year the following amounts: January 1, 1911, $478,877.33; January 31, 1912, $707,294.00; January 1, 1913, $520,626.89; January 1, 1914, $712,840.80; January 1, 1915, $610,-409.86; January 1, 1916, $227,476.30. On January 1, 1917, White had paid Clews all that he owed, and had to his credit $8,367.17. The tax receiver then assessed against the estate of White the said securities as follows: For 1911, $1,003,866.87; for 1912, $1,399,161.67; for 1913, $1,558,300.83; for 1914, $1,548,735.38; for 1915, $1,439,160.83; for 1916, $1,509,936; for 1917, $1,623,567.52.

The executor then demanded arbitration, as provided by Park's Pol. Code Ga. § 1116 (d), being Acts 1910, pp. 22–24, and named his arbitrator. The tax receiver appointed his arbitrator. The arbitrators failed to agree upon an umpire, and he was appointed by the board of commissioners of roads and revenues of Richmond county. On the day such arbitration board was to convene, September 2, 1919, counsel representing the state of Georgia applied to the judge of the superior court of Richmond county seeking to enjoin Callaway and the arbitrators and umpire from proceeding with such arbitration. This application was denied. The arbitration proceeded. Counsel for the state and Richmond county appeared before the board and took part in such proceedings. The following award was on September 2, 1919, made by the arbitrators and umpire as to the assessments for the respective years: For 1911, $112,744.83; for 1912, $154,550.67; for 1913, $187,-927.98; for 1914, $194,138.96; for 1915, $190,202.74; for 1916, $301,-183.67; for 1917, $360,813.92. On September 5, 1919, such award was delivered to the tax receiver, who made entries on the tax digests for the respective years in accordance therewith. On September 5, 1919, Callaway, as executor, tendered to the tax collector $27,980.88 "in full payment of the above taxes as calculated upon the assessments rendered by the board of arbitration on September 2, 1919." Thereafter, on September 25, 1922, such executor paid the tax collector $27,-980.88, without any stipulation that it was "in full payment," and it

was received "without prejudice to the rights of any of the parties in the pending litigation in reference thereto." Such executor claimed that no additional interest was owing, because of the restraining order granted by the judge of the superior court of Richmond county.

On September 6, 1919, the state of Georgia, in its behalf, and in behalf of Richmond county and the board of education of Richmond county, brought its petition, supplemental to that filed on September 2, 1919, against C. A. Steed, tax receiver, and C. S. Bohler, tax collector, of Richmond county, and prayed that they be enjoined from making the tax assessments and collecting the taxes according to such arbitration. The executor demurred to such original and supplemental petitions, as amended, upon certain special grounds, and upon the general grounds that "said petition sets forth no legal or equitable cause of action," and because the "parties assuming to represent the state of Georgia in said proceeding have no legal authority to bring such a proceeding," and said arbitration proceedings could be attacked only by the tax receiver or by the executor. The judgment of the court was that the demurrer is "sustained and the restraining order heretofore granted is dissolved and plaintiff's petition, as amended, is hereby dismissed." The Supreme Court of Georgia has decided the mandamus proceedings, affirming that they were rightly dismissed (Richmond County v. Steed, 150 Ga. 229, 103 S. E. 253), and the foregoing petitions for injunction, affirming that the injunctions were properly denied, but the different Justices assigning different reasons for such conclusion in the last petition (State v. Callaway, 150 Ga. 235, 103 S. E. 792; Id., 152 Ga. 871, 111 S. E. 563).

The present bill is by Callaway, executor of White, against the tax receiver, tax collector, and sheriff of Richmond county, and sets out the above-stated facts, and, in addition, that subsequent to the said decision of the Supreme Court of Georgia, reported in 152 Ga. 871, 111 S. E. 563, the tax collector of Richmond county, Ga., issued seven tax executions against orator, as executor of White, for back taxes for the years 1911 to 1917, inclusive, aggregating the principal amount of $145,568.30 and interest to date, $70,764.07, and has placed them in the hands of the sheriff of said county for the purpose of levy; that such executions were based upon the assessments made by the tax receiver, after taking the deposition of a member of Clews & Co., which assessments are set forth above; that included in such assessments, in addition to the stock in certain national banks, was $10,500 of stock of the Southwestern Railway of Georgia, a Georgia corporation, which is not taxable by the state or county; that the assessments made by the tax receiver were expressly made under the provisions of the Acts of the General Assembly of the State of Georgia of 1910, as codified in Park's Political Code of Georgia, § 1116 (d), and which expressly provides for the right of arbitration; that the right of your petitioner to such arbitration was conclusively established by the decision of the superior court of Richmond county, affirmed by the Supreme Court (150 Ga. 235, 103 S. E. 792), and such decision is res adjudicata; that by reason of counsel for the state participating in such arbitration the state is estopped from any attempt to void or evade the same; that the decision by the superior court of Richmond county in the subsequent

proceeding attacking such award, which was dismissed on demurrer, and which dismissal was affirmed by the Supreme Court (152 Ga. 871, 111 S. E. 563), is also res adjudicata; that the issuance of such tax executions by the tax collector was under the Act of the General Assembly of Georgia approved July 31, 1918 (Acts 1918, p. 232); that the act of 1918 did not repeal the act of 1910, but was cumulative; that such act of 1918 was violative of article 1, § 3, par. 2, of the Constitution of Georgia prohibiting retroactive legislation; that if such act of 1918 repeals the act of 1910 it is expressly discriminatory by preserving to taxpayers who make returns to the comptroller general the right to arbitrate, and denying such right to those taxpayers who make returns to the tax receivers, and such discrimination is violative of article 7, § 2, par. 1, and of article 1, § 1, par. 2, of the Constitution of Georgia, and is in violation of the Fourteenth Amendment to the Constitution of the United States; that during 1911–1917, inclusive, the assessment of property in Georgia for taxation did not average 25 per cent. of the true value thereof, and of the class of property sought to be taxed against orator did not exceed 10 per cent. of the true value; that the award of the arbitrators fixed the amounts at from 12 per cent. to 25 per cent. of the true value; that the county board of tax assessors for Richmond county for the year 1918 assessed all of the securities of the said White for the year 1918 at $250,000; that the assessments based upon such award, and upon which your orator is willing to pay, are largely in excess of the assessments made and taxes required of other taxpayers upon the same class of securities in Georgia and Richmond county; that stocks and bonds in nonresident corporations are not assessed or returned at exceeding 5 per cent. of their value; that during the years 1911–1917 bonds of local corporations were not returned for taxation by owners living in Richmond county; that during such years inventories of estates in the court of ordinary of Richmond county, whence information as to the White estate was obtained, showed like securities of over $1,500,000 value, upon which no taxes had been paid, and yet neither the tax receiver nor any other agent of the state or county attempted to collect taxes on such property, except in the case of one small estate; that such tax receiver claims that neither he nor the board of tax assessors ever assess any property at its full value, but try to assess real estate at 66⅔ per cent. of its value, and money, notes, and securities when returned at 50 per cent. of their value; that the act of the tax receiver in making such assessments against your orator at full value, and of the tax collector in issuing the executions, were discriminatory against your orator, in violation of the aforesaid provisions of the state and United States Constitutions; and that the issuance of such executions places a cloud upon the title of all property in the hands of orator, interferes with the administration of the estate, and will cause irreparable loss. The prayers were: (a) For injunction; (b) that the assessments and tax executions be declared illegal and cancelled; (c) that the assessments fixed by the award be finally fixed as the correct amounts; and (d) for general relief.

The defendants made response as follows: They aver that the tax executions were legal; that White was a resident of Richmond county

at the time of his death; that the securities in question were liable for taxation in said county and state; that the act of the board of assessors of Richmond county, in fixing in 1918 the assessed value of such securities at $250,000, is in no way binding; that the assessments were not made under the act of 1910, but were made under the act of 1918, the only act then of force on this subject; that, if any error. were made in the calculation of taxes, this did not invalidate the tax, but can be corrected; that the arbitration was held, but that it was not authorized by law, that it was not properly organized, and that the tax receiver had no power to agree to it; that the taxing authorities of the state are not estopped from raising the question of jurisdiction; that counsel for the state and county stated to the arbitrators, in appearing before them, that they did not waive any right in so doing; that the award under such arbitration proceeding is void; that the judgments of the superior court of Richmond county and of the Supreme Court of Georgia are not res adjudicata as to the validity of the arbitration proceeding; that, even if the arbitration proceeding were authorized, the award was illegal, because of the method adopted by the arbitrators and the umpire, and because it was fraudulent, as evidenced by the gross underassessment; that any assessment of stock in a Georgia corporation, or of national bank stocks, was an oversight, and can and should be corrected; that all allegations of intentional and systematic undervaluations for tax assessments and of discrimination as to the class of property represented by the securities in question, or as to White and his estate, are denied; that plaintiff, as executor, is not in possession of any property the title to which can be clouded by the lien of the tax execution, he having turned over all real estate passing under the will to those entitled thereto; that such tax executions will not interfere with the due administration of the estate in the hands of plaintiff; and that the injunction should not be granted, or the executions declared invalid.

[1, 2] 1. *Jurisdiction.* When this bill was first presented, it was thought that it fell within section 266 of the Judicial Code (Comp. St. § 1243), and Circuit Judge Alex C. King and District Judge Samuel H. Sibley were called by District Judge Beverly D. Evans to preside with him. They decided that the bill did not fall within such section, but Judge Evans did on April 29, 1922, enjoin the collection of taxes on stock in national banks in New York, and decided that by reason of the charges of discrimination, and the evidence to support the same, the status should be preserved until a full and impartial inquiry could be had. Jurisdiction is thus established as the law of this case, and in my opinion such decision is correct. As to stock in national banks out of the state, see Stanley v. Board of Supervisors of Albany County (C. C. N. Y.) 6 Fed. 561; Revised Statutes, § 5219 (U. S. Compiled Statutes, § 9784). As to discriminatory taxation, and there being no right in Georgia to pay an illegal tax and recover the same, Cummings v. National Bank, 101 U. S. 153, 25 L. Ed. 903; Raymond v. Chicago Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Atchison, T. & S. F. Ry. v. Sullivan, 173 Fed. 456, 97 C. C. A. 1 (C. C. A. 8th Circuit); Union Pacific Railroad v. Board of County Commissioners, 247 U. S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110; Greene

v. Louisville Railway Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Sioux City Bridge Co. v. Dakota County, Neb., 43 Sup. Ct. 190, 67 L. Ed. ——, decided January 2, 1923.

[3] Federal jurisdiction existing, it extends to the determination of all questions presented, irrespective of the disposition made of the federal questions. Ohio Tax Cases, 232 U. S. 576, 34 Sup. Ct. 372, 58 L. Ed. 737; Greene v. Louisville & Interurban R. R., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88.

2. *Are the decisions of state courts res adjudicata as to award of arbitrators?* Nowhere in the pleadings in the state court was the act of 1918 pleaded, either as being the present law or as repealing the act of 1910, Park's Political Code of Georgia, § 1116 (d). But the Supreme Court of the state of Georgia (State of Georgia v. Callaway), 152 Ga. 871, 111 S. E. 563) and Judge Evans in this case decided that the act of 1918 did repeal the act of 1910. If the issue in the state court had been as to the validity of the award under the act of 1910, and the judgment of the state court had been necessarily to the effect that such award was valid and legal, this would be the law between the parties as to that fact, even though the same court might have held the exact contrary under appropriate pleadings.

"An adjudication of the same subject-matter in issue in a former suit between the same parties, by a court of competent jurisdiction, should be an end of litigation." Code of Georgia, § 4335.

"A judgment of a court of competent jurisdiction is conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered." Code of Georgia, § 4336.

See Perry v. McLendon, 62 Ga. 598; Watkins v. Lawton, 69 Ga. 671; Allen v. Schweigert, 113 Ga. 69, 38 S. E. 397; Western & Atlantic Railroad v. Third National Bank, 125 Ga. 489, 54 S. E. 621; Rawlins v. State, 126 Ga. 96, 54 S. E. 924, and many cases cited under the above-quoted sections of the Code.

[4] But were the decisions of the state courts necessarily to the effect that the award was valid? To the bill presented on September 2, 1919, there were no defensive pleadings, and the prayer was for injunction against holding the arbitration. The prayer in the bill of September 6, 1919, was for injunction, and that the award be declared void. To this bill there was filed a general and special demurrer. The action of the judge of the superior court on the first bill was:

"Petition read and considered. It is hereby refused and denied."

The action on the second bill was to sustain the demurrer and dismiss the bill. The judgments in both cases are consistent with the conviction that the entire arbitration, including the award, is a nullity. It is manifest that the Supreme Court of Georgia so considered. None of the decisions of the courts of Georgia are conclusive, as res adjudicata, in establishing the validity of the award. Standard Life Insurance Co. v. City of Atlanta, 151 Ga. 153, 106 S. E. 110; Steed v. Savage, 115 Ga. 97, 41 S. E. 272; State of Georgia v. Callaway, 152 Ga. 871, 111 S. E. 563.

[5] 3. *Did the act of 1918 repeal the act of 1910?* Judge Evans has already decided in this case that Acts 1918, p. 232, repealed the act of 1910 (Park's Political Code of Georgia, § 1116 [d]), and is the existent law as to remedies for conditions like those in this case. This necessarily includes a decision adverse to the contention that the act of 1918 is unconstitutional. I concur in such conclusion.

[6] When a statute is manifestly intended to cover the subject-matter of a former statute, and operate as a substitute for it, the former statute will be held repealed by implication. Johnson v. Southern Mutual B. & L. Ass'n, 97 Ga. 622, 25 S. E. 358; Western & Atlantic Railroad v. Atlanta, 113 Ga. 556, 38 S. E. 996, 54 L. R. A. 294; Verdery v. Walton, 137 Ga. 213, 216, 73 S. E. 390; 26 Am. and Eng. Ency. of Law (2d Ed.) 731; Thornton v. State, 5 Ga. App. 397 (3), 63 S. E. 301.

[7] Due process is provided by the act of 1918, because opportunity is afforded to be heard as to the excessiveness of the tax or its legality. Central of Georgia R. R. v. Wright, 207 U. S. 127, 28 Sup. Ct. 47, 52 L. Ed. 134, 12 Ann. Cas. 463.

[8] Under the doctrine of the right to classify, the providing of different remedies for those who make return to the comptroller from those who make return to the tax receivers is justified. The state surely has the right to provide different remedies for those taxpayers who make returns to the comptroller general and who are in default from those who make returns to the tax receivers and who are in default. Furthermore, it is an unwarranted assumption that either a different or disadvantageous result will follow from a court of equity passing upon the question of excessiveness rather than a board of arbitration.

[9] The act of 1918 does not contemplate that a court of equity shall assess for taxation. The issue for it to determine is: Is the assessment excessive; and, if so, to what extent? It would enjoin only what was excessive and leave standing the assessment already made as thus modified.

[10] 4. *Admissibility of the testimony of Steed.* C. A. Steed was during the years 1911 to 1917, inclusive, tax receiver of Richmond county, and as such it devolved upon him to assess property for taxation. He made the assessments the enforcement of which the bill in this case seeks to enjoin. Petitioner has offered testimony of Steed to the following effect: In Richmond county the assessments for taxation have for many years been as to city real estate never in excess of 66⅔ per cent. of its market value, and as to country real estate not generally in excess of 33⅓ per cent., and as to notes and bonds not over 50 per cent.; assessments for taxation are never made of the full market value. In 1918 the board of assessors of Richmond county assessed the stocks and bonds of the estate of J. B. White at $200,000, and notes and mortgages and cash at $50,000, all of which were on the books as stocks and bonds; that for 1918 the estate of D. F. Jack was assessed for stocks and bonds at $150,000, and that the total assessments for stocks and bonds in Richmond county, including the above two items, was $482,000; that during the past few years several large estates have been administered in the court of ordinary of Richmond county, and he had not undertaken to assess any of them, ex-

cept one, for back taxes, because they were not brought to his attention, and the assessment against the *one* estate for back taxes was settled for about 30 or 38 cents on the dollar. Other portions of Steed's testimony modified some of that stated.

Objection was made that Steed was incompetent to testify to such facts because they might tend to invalidate his assessment. Reliance is had upon the following authorities: 22 R. C. L. p. 474. This is only to the effect that an officer cannot perform an act, and then say that he intended other than the act denoted. Illinois Central R. R. Co. v. Commonwealth, 128 Ky. 268, 108 S. W. 245, and on appeal as Illinois Central R. R. v. Kentucky, 218 U. S. 551, 31 Sup. Ct. 95, 54 L. Ed. 1147, is to the effect that when an assessment has been finally made it passes beyond the control of the assessors, and they cannot alter it by declaring what they intended, or make any agreement that such assessment would not be enforced. Chicago, B. & Q. Railroad v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636, merely follows the rule, recognized as sound even by those who rebel at the rule prohibiting the testimony of appraisers to attack an award or jurors a verdict, that neither in the same case nor elsewhere, by cross-examination or otherwise, can the motives and reasons actuating the officers be inquired into to create confusion and invalidate the act. Wigmore (2d Ed.) §§ 2349–2352, Newport Mining Co. v. Ironwood, 185 Mich. 668, 152 N. W. 1088, and Boston & Maine Railroad v. State, 76 N. H. 91, 79 Atl. 703, are to the same effect. Eau Claire v. Eau Claire Water Co., 137 Wis. 529, 119 N. W. 555, and Allen v. State (Ga. Sup.) 116 S. E. 534, are merely to the effect that jurors will not be heard as to what transpired or was heard during their deliberations to impeach the award or verdict.

None of such cases, nor the principles discussed therein, control here. Steed does not seek in this testimony to interpret his assessment as different from what it appears; he does not explain his reasons for reaching his conclusion; he does not deal in any way with his making of these assessments. His testimony is as to acts of himself and of others not connected with his acts, and in connection with other matters, most of which are of public record or knowledge. If he cannot be heard on any matter that tends to invalidate an award, he could not correct an error, or explain the principle upon which he acted, though he thought such principle sound and lawful, because such principle might be unsound and unlawful. The admission of such evidence violates no sound principle; its exclusion would work an injustice.

[11] 5. The evidence is voluminous, and in some material matters contradictory. A discussion of it in detail would probably prove of but little value. I entertain no doubt from the evidence that the fixed principles controlling the officers in Richmond county who assess for tax purposes are that no property is assessed for tax purposes at its true market value, and that bonds and stocks are never assessed at above 50 per cent. of their value; that it is common practice throughout the state, and acquiesced in by the taxing authorities, for bonds and stocks of nonresident corporations to be not returned at all, or at a very small percentage of their market value; that easy opportunity was afforded

the taxing authorities of Richmond county to learn of other estates which were as liable, though in smaller amounts, as the White estate; that no proceedings were had against but one of them, and that was settled for 30 or 33 cents on the dollar; and that these facts were known to the tax receiver of Richmond county when the assessments against the White estate were made. With this knowledge, the assessment against the White estate at the true market value was "knowingly, willfully and intentionally" administering "the law so as to place upon one person * * * a burden from which another person * * * similarly situated is relieved."

I have not overlooked the requirement of the statutes that property must be returned or assessed at its true market value; that taxing officers claim not to be responsible for false returns; that the comptroller general urges that the law be complied with; and that the tax receiver of Richmond county and tax receivers elsewhere state that there is no systematic, uniform system of taxing any kind of property at less than its true market value. But the evidence not only warrants, but practically demands, the conclusion, known of all men, that, if the estate of White be required to pay taxes on bonds and stocks of nonresident corporations at their true market value, this estate will be discriminated against as compared with every other citizen of this county in like situation during the years for which taxes are sought, whether for current taxes or past taxes. Thus convinced, I am bound to grant protection against such discrimination.

Has the estate of White already paid such an amount that the enforcement of any additional amount would be a discrimination? This cannot be answered with confidence. There is not sufficient evidence to justify a positive and exact conclusion. The only tribunal that has attempted to reach such conclusion is the board of arbitrators, whose authority in the premises has been denied, but whose investigation and conclusion can nevertheless be properly used as an aid. Upon the payment of the taxes fixed by the board I am satisfied that there will have been paid much more than the average, and probably more than any but a very few taxpayers in Richmond county on that class of property. But the significant fact is that for the year 1918 the board of assessors of said county assessed this class of property of the White estate at about 18 per cent., while the board of arbitrators for 1917 valued such property for taxation at about 24 per cent., and the average of percentages fixed by the board of arbitrators for the seven years for which taxes are sought was something over 16 per cent. reckoning on the full market value, and over 24 per cent. reckoning on White's equity. I cannot justify a conclusion that any additional taxes can be demanded without unlawful discrimination.

[12] However, the taxes owing should have been paid without condition. The amount tendered on September 5, 1919, was $27,980.88, and was upon condition that it was "in full payment of the above taxes and interest as calculated upon the assessments rendered by the board of arbitration on September 2, 1919." On September 25, 1922, the same amount was paid by the executor of the estate of White unconditionally.

Under the view herein expressed I am of the opinion that there must be paid interest on such amount, $27,980.88, for the period from

September 5, 1919, to September 25, 1922, and so hold. Except as to the amount of such interest, the executions attacked in this case are canceled, and their enforcement for any other amount is enjoined.