THE CITY COUNCIL OF AUGUSTA vs. PEARCE.

Whilst municipal taxes upon property must be *ad valorem*, yet value is to be ascertained and determined, not by judicial proceedings, but by the legally constituted authorities established for that purpose in the given municipality ; and an assessment made by such authorities in the prescribed mode, and without fraud or collusion, is final and conclusive upon the question of value as a basis of taxation for the time being.

May 3, 1887.

Municipal Corporations.   Tax.   Before Judge RONEY. Richmond County.   At Chambers, February 26, 1887.

Reported in the decision.

JOHN S. DAVIDSON, for plaintiff in error.

LEONARD PHINIZY, for defendant.

BLECKLEY, Chief Justice.

The property of Mrs. Pearce, certain real estate, was assessed for taxation in the city of Augusta for the year 1886, at a valuation of $6,000.   She filed a written protest against that valuation, and lodged it with the local authorities in the manner prescribed by the city ordinance. Whether any action was ever taken upon it, or what became of it, does not appear.   She had purchased her property in the year 1884, in the month of August, for $5,000; and her contention was that that sum was its true value for taxation.   The city, however, taxed it on the basis of $6,000 value, and issued an execution against her for the amount of the taxes at the regular established rate *ad valorem* for the year.   This execution was levied upon the property, and the city authorities were proceeding to sell, or making ready to sell, when she filed her bill praying for an injunction, setting up these facts, and basing the bill alone upon the ground that the property was assessed too

high, contending that the assessment ought to have been at $5,000 instead of $6,000. A restraining order was granted, and upon the hearing various affidavits were produced, most of them going to show that, in the opinion of the witnesses, the property was worth $5,000 and no more.

On the other hand, some affidavits were produced upholding the assessment made by the city. Among the affiants were the board of assessors, consisting of the board proper, composed of four citizens (one from each ward) and one member of the city council, and, as a sort of prefix, the city sheriff. All these testified that the property was worth $6,000; some of them that it was worth considerably more. Besides this general estimate, details as to the improvements were proved by certain experts, tending to show that the improvements alone were worth almost the amount of the assessment.

The presiding judge granted the injunction, and that is the error complained of. He restricted it, of course, to the difference between $5,000 and $6,000, granting the injunction only as to the collection of taxes upon $1,000.

It is very manifest to us that the grant of this injunction proceeded upon a misapprehension of the remedy. The city must assess and collect taxes *ad valorem ;* it has the means to ascertain and determine value; and these local means must be employed, and when a result is reached, it must be acquiesced in by the tax-payers. The system in Augusta, established by ordinance, is, to have all the real estate examined and listed by the city sheriff, and he is required to estimate its value in the first instance; and that estimate is entered in his book. This book is presented to the board of assessors, consisting, as I have stated, of one member of council and four citizens (one from each ward); and they revise it, and determine whether the value suggested is correct or not, and they finally settle upon the valuation of each piece of property. Then a notice is published for ten days, warning citizens that assessments have been made; and the

ordinance provides that during these ten days, any one who has complaint to make can file a written protest upon oath; and that is presented to the city council. It is filed with the city sheriff, but it is his duty to lay it before the city council, and the council entertain it and make the proper reduction, if they think any ought to be made; and if not, they refer it to the board of assessors. There is no provision for going any further with it.

It seems to be the scheme to hear the citizen on his protest, and to act upon it in the city council, if the council think proper to act themselves; and if not, they refer it back to the board of assessors for a reconsideration or revaluation; and there it stops. We assume that as there was a protest in this case, the officials acted upon it as it was their duty to do, the presumption being that public officers perform their duty. 1 *Ga.* 1; *Id.* 3; *Id.* 88; 2 *Ga.* 108; 4 *Ga.* 155; 5 *Ga.* 11; 6 *Ga.* 188; 19 *Ga.* 99; 20 *Ga.* 220; *Id.* 333.

There is no fraud charged; there is nothing charged but over-valuation. It is not charged that these officers acted in bad faith, or fixed a valuation that they did not believe was a true and correct one. The scheme of the bill is to get away from the opinion of the assessing officers, and substitute for it proof by witnesses as to what the real value was. Of course, this is simply to make a jury, in the last resort, or perhaps the masters in chancery, the assessors of the city taxes of Augusta. That is entirely impracticable. No city could be conducted upon that principle of raising revenue. A city is a government, and it must know what its income is likely to be. It must be able to assess taxes, to make its estimate beforehand upon the probable yield of the assessment, and order its expenditures and disbursements accordingly. It is no less impracticable for a city to live upon the verdicts of juries or the reports of masters, than for a private individual to do it. It would be just as easy to determine by verdict or the master's report whether we are to have breakfast or

dinner, and live on that scheme of supply, as to determine by verdict or report whether a city shall have revenue and sustain municipal life by that dilatory and uncertain source of income. Nothing could be more wild than to attempt to maintain government by judicial decrees. And if one citizen can demand a decree on the question of value, so can every citizen. With us the judge, as chancellor, can determine no question of fact. Where disputed facts are involved, either the report of a master or the verdict of a jury is indispensable. Final decrees can be rendered only during term; there are but two terms in a year for each county, commencing six months apart, and the most expeditious equity cause is not ripe for decree until the second term. It surely can admit of no question that a court of chancery is an unfit instrumentality to assess taxes, or to supervise assessments upon the bare, naked question of value. Whilst municipal taxes upon property must be *ad valorem*, yet value is to be ascertained, and determined, not by judicial proceedings, but by the legally constituted authorities established for that purpose in the given municipality; and an assessment by such authorities, in the prescribed mode, and without fraud or collusion, is final and conclusive upon the question of value as a basis of taxation for the time being.

Judgment reversed.