FRIEDLANDER BROTHERS *v.* CITY OF MOULTRIE *et al.*

The section of the charter of the City of Moultrie which authorizes the tax-assessors of the city, elected in accordance with the provisions of that section, to assess the value of the real estate and personal property of the taxpayers in the city for the purpose of taxation, and which confers upon said tax-assessors the authority to raise and increase the value of the real estate or personal property of taxpayers when in their judgment the value placed thereon is too small, and which provides for due notice and a hearing of objections to such assessments when made by the taxpayer, is not unconstitutional for the reason that it is violative of the due-process clause of the Federal constitution.

No. 3206.    FEBRUARY 27, 1923.

Equitable petition. Before Judge W. E. Thomas. Colquitt superior court. April 6, 1922.

Friedlander Brothers filed a petition seeking injunction against the City of Moultrie et al., to restrain the defendants from collecting the sum of $417 as taxes for the year 1921. Petitioners alleged that the sum was excessive and based on an illegal assessment. They had made a return of their property in compliance with section 31 of the charter of the City of Moultrie; and thereafter the tax-assessors of the city gave plaintiffs notice that their return had been raised from $31,049 to $50,560, and in the notice plaintiffs were requested to meet the assessors at the city hall at a time stated, the notice being as follows: "Your city property has been assessed at $50,560 for 1921. You gave in $31,049. If you have any complaint to render, meet us at the city hall at 8 o'clock a. m., August 29; otherwise your property will be entered on the digest as per our findings." In compliance with the notice, the petitioners met the tax-assessors at the time and place designated in the notice, and objected to the increase. The tax-assessors disregarded the objection and the sworn statement made by the petitioners with reference to the value of their property return for taxation, and, without requiring any other proof and without making any counter-showing or hearing evidence to the contrary, adhered to the assessment already made by them and entered upon the tax-digest of said city the assessment of petitioners' property at the figure fixed by the assessors. Petitioners demanded that the matter be referred to arbitrators as provided in section 1116(e) of Park's Civil Code; but the assessment made was permitted to stand. The

city refused to relieve petitioners of the assessment alleged to be excessive,. and is threatening to issue a tax execution against them and levy the same upon their. property. The prayer was for injunction, and that the assessment above the sum of $30,889.20 be decreed to be illegal and excessive. To this petition the defendants filed a general demurrer, which was sustained, and the petitioners excepted.

*James Humphreys* and *Askew & Mather,* for plaintiffs.

*P. Q. Bryan,* for defendants.

BECK, P. J. (After stating the foregoing facts.) The assessment was made in pursuance of section 32 of the act approved Nov. 20, 1901 (Act 1901, p. 591), entitled "An act to create a new charter for the City of Moultrie," etc. That section reads in part as follows: "Be it further enacted, that said mayor and aldermen shall, at the first meeting after the close of the tax books in the year 1902, elect three (3) intelligent, upright, discreet citizens of said city, as city tax-assessors, one of which shall be elected for a term of one year, one for a term of two years, and one for a term of three years. . . It shall be the duty of said tax-assessors to assess the value of the real estate and personal property in said city for the purpose of taxation by said city; and it shall be their duty to examine the tax returns placed before them by the officer receiving the same, and increase the value of the real estate or personal property when, in their judgment, the value placed thereon by the taxpayer is too small. The mayor and aldermen shall have authority to prescribe rules for the government of said city tax-assessors. Said assessors shall make a return of their work within thirty days after the tax returns are turned over to them; *provided,* that the mayor and aldermen may, if they see fit, extend the time in which said tax-assessors shall have to make their returns. When said returns are made, said assessors shall appoint a time. and place for hearing objections to their assessments; and the clerk of said city shall give notice to each party whose tax returns have been raised, ten days before the said hearing, stating the time of hearing and the increase so made by said assessors. This notice may be served personally on said taxpayer by the marshal or policeman of said city, or mailed to said person to his last known address, with postage prepaid."

The constitutionality of this section of the charter of the City of Moultrie is attacked upon the ground that it is void and violative of the fourteenth amendment of the constitution of the United States, for the reason that it deprives taxpayers of their property without due process of law, that it is void for the reason that it " prescribes that the tax-assessors shall make their assessment of the property of the taxpayers before any hearing is given to the taxpayer; and under the due-process clause of the 14th amendment to the constitution of the United States, petitioners are entitled to a hearing as to the value of their property assessed for taxes before said assessment is made." Petitioners contend further that the section of the charter referred to is unconstitutional for the reason that it fails to provide for any judicial determination of the rights of petitioners in cases like the present one. They contend that there is no provision for submission to arbitrators or other judicial investigation of the value of the property of the taxpayers, and no right of appeal from the decision of the assessors is prescribed, but the decision of the assessors is final so far as the value of the property of taxpayers is concerned.

We do not think that the section of the charter of the City of Moultrie under consideration should be declared unconstitutional and void on the grounds urged against it, in view of that part of the section challenged as unconstitutional, which provides that the assessors " shall appoint a time and place for hearing objections to their assessments; and the clerk of said city shall give notice to each party whose returns have been raised, ten days before the said hearing, stating the time of the hearing and the increase so made by the assessors.". This provision for a hearing, properly construed, gives to the taxpayer who desires to contest the assessment made by the tax-assessors of the city an opportunity to submit evidence to support his objections to any assessment which he desires to contest, and to show that the same is excessive; and these petitioners, as taxpayers, were given this opportunity after due notice, as appears from their petition. The fact that no appeal is provided for does not deny due process, nor is the taxpayer deprived of due process because no other judicial investigation is provided for.

In the case of *City Council of Augusta* v. *Pearce,* 79 *Ga.* 98

(4 S. E. 104), it was said: "Whilst municipal taxes upon property must be ad valorem, yet value is to be ascertained and determined, not by judicial proceedings, but by the legally constituted authorities established for that purpose in the given municipality; and an assessment made by such authorities in the prescribed mode, and without fraud or collusion, is final and conclusive upon the question of value as a basis of taxation for the time being." In the case from which this excerpt is quoted the property of a certain taxpayer was assessed for taxation at a figure which she charged was excessive, and she filed her petition for injunction to restrain the city from enforcing an execution for the taxes, based upon the alleged excessive assessment of the value of the property. A restraining order was granted, and upon the hearing an interlocutory injunction was granted. The city excepted. The judgment of the court below was reversed. In the course of the opinion rendered in that case the court said: "The system in Augusta, established by ordinance, is, to have all the real estate examined and listed by the city sheriff, and he is required to estimate its value in the first instance; and that estimate is entered in his book. This book is presented to the board of assessors, consisting, as I have stated, of one member of council and four citizens (one from each ward) ; and they revise it and determine whether the value suggested is correct or not, and they finally settle upon the valuation of each piece of property. Then a notice is published for ten days, warning citizens that assessments have been made; and the ordinance provides that during these ten days any one who has complaint to make can file a written protest upon oath; and that is presented to the city council. It is filed with the city sheriff, but it is his duty to lay it before the city council, and the council entertain it and make the proper reduction, if they think any ought to be made; and if not, they refer it to the board of assessors. There is no provision for going any further with it.

"It seems to be the scheme to hear the citizen on his protest, and to act upon it in the city council, if the council think proper to act themselves; and if not, they refer it back to the board of assessors for a reconsideration or revaluation; and there it stops. We assume that as there was a protest in this case, the officials acted upon it as it was their duty to do, the presumption being

that public officers perform their duty. 1 *Ga.* 1; Id. 3; Id. 88; 2 *Ga.* 108; 4 *Ga.* 155; 5 *Ga.* 11; 6 *Ga.* 188; 19 *Ga.* 99; 20 *Ga.* 220; Id. 333.

"There is no fraud charged; there is nothing charged but overvaluation. It is not charged that these officers acted in bad faith, or fixed a valuation that they did not believe was a true and correct one. The scheme of the bill is to get away from the opinion of the assessing officers, and substitute for it proof by witnesses as to what the real value was. Of course this is simply to make a jury, in the last resort, or perhaps the masters in chancery, the assessors of the city taxes of Augusta. That is entirely impracticable. No city could be conducted upon that principle of raising revenue. A city is a government, and it must know what its income is likely to be. It must be able to assess taxes, to make its estimate beforehand upon the probable yield of the assessment, and order its expenditures and disbursements accordingly. It is no less impracticable for a city to live upon the verdicts of juries or the reports of masters, than for a private individual to do it. It would be just as easy to determine by verdict or the master's report whether we are to have breakfast or dinner, and live on that scheme of supply, as to determine by verdict or report whether a city shall have revenue and sustain municipal life by that dilatory and uncertain source of income. Nothing could be more wild than to attempt to maintain government by judicial decrees. And if one citizen can demand a decree on the question of value, so can every citizen. With us the judge, as chancellor, can determine no question of fact. Where disputed facts are involved, either the report of a master or the verdict of a jury is indispensable. Final decrees can be rendered only during term; there are but two terms in a year for each county, commencing six months apart, and the most expeditious equity cause is not ripe for decree until the second term. It surely can admit of no question that a court of chancery is an unfit instrumentality to assess taxes, or to supervise assessments upon the bare, naked question of value. Whilst municipal taxes upon property must be ad valorem, yet value is to be ascertained, and determined, not by judicial proceedings, but by the legally constituted authorities established for that purpose in the given municipality; and an assessment by such au-

thorities, in the prescribed mode, and without fraud or collusion, is final and conclusive upon the question of value as a basis for taxation for the time being."

This case of the *City Council of Augusta* v. *Pearce* was cited in *McWilliams* v. *City of Tallapoosa*, 137 *Ga.* 283 (73 S. E. 510). In the latter case the section of the charter of the City of Tallapoosa relating to the assessment of property for purposes of taxation was attacked as violative of the due-process clauses of the constitution of the United States and the constitution of Georgia, in that it attempted to make final the action of the mayor and council in the assessment of property for taxation, whatever might be the value at which the property was assessed, and irrespective of whether the action of the mayor and council in the premises was taken in good faith or fraudulently, and denied property owners the right of review of the justness and fairness of the assessment made; and upon the further ground that the section did not provide for notice to property-owners of the assessment of their property, and did not give a reasonable opportunity to be heard. The section of the charter thus attacked was as follows: "If the owner of any real or personal property conceives that said city council have placed too great a value on such property, such owner or his agent may have such assessment reviewed by the mayor and council of said city, who shall assess such property at its reasonable and just value, and their decision shall be final in the premises; and if any taxpayer in said city think that said city council have placed too low an estimate on any property therein, such person shall have the right to have such assessment reviewed by the said mayor and council, whose action shall be final as aforesaid. The list of all real estate assessed as herein provided, and all personal property returned by the owner, or assessed as herein provided, shall be completed by said city council on or before the 15th day of August, and within fifteen days thereafter said mayor and council shall ascertain and declare the rate to be levied and collected from such assessment and returns." This court held that this section of the charter was not violative of the due-process clauses of the constitution of the United States and the constitution of Georgia; and that decision is cited approvingly in the case of *Vanduzer* v. *Irvin*, 138 *Ga.* 524 (75 S. E. 649), and in the latter case this

court said: "He [the plaintiff] is in error as to the validity of section 17 of the act as to the assessment of property by assessors. The act specifically provides for the appointment of tax-assessors, who are to value property subject to taxation, whether given in by the owner or not, and that the taxpayer shall be given notice of the assessment and an opportunity to be heard before the assessment shall become final. He is thus given due process of law."

We do not overlook the fact that in the charter of the City of Elberton provision was made that a taxpayer could contest by affidavit of illegality the validity of the tax or the legality of the purpose to· collect it. But it is clearly inferable from the decision in the *Vanduzer* case that the provision for the filing of such affidavit of illegality did not contemplate allowing the taxpayer to contest by affidavit of illegality the correctness of the valuation and assessment made by the assessors. Had it been competent to raise such a question as that by the affidavit of illegality, the court would not have held the affidavit of illegality filed by the complainant in the *Vanduzer* case insufficient, because it did raise the question as to whether the valuation made by the assessors was excessive. In that case this court said: "Section 17 of the charter (Acts 1896, p. 148), which provides for the assessment and valuation of property for taxation by a board of assessors, and requires notice to the taxpayer and an opportunity to be heard, and that the assessment shall be fixed according to the facts developed at such hearing, if one is had, is not unconstitutional as depriving the taxpayer of due process of law." The *Vanduzer* case also adjudicates adversely to the plaintiff the contention that section 5 of the act approved Aug. 13, 1910, which is entitled "An act to provide for a method of assessing and collecting taxes where such taxes are authorized," etc., is applicable to this case. Section 5 of the act just referred to is embodied in Park's Civil Code § 1116 (e). And in the *Vanduzer* case it was said: "He [the plaintiff] is also in error as to the applicability· of the act approved Aug. 13, 1910 (Acts 1910, p. 22). This act provides for the method of assessing and collecting taxes where no adequate provision is made in the act authorizing the tax, or in the general law, for giving the taxpayer notice and opportunity to be heard as to the valuation and taxability of his property. This act is intended to supplement such tax laws as pro-

vide for the assessment of property where the taxpayer is not given notice and opportunity of hearing, and is not intended to apply to cases where the law for the levy of the tax provides for notice of its assessment."

Attention may also be properly called here to the fact that the method of assessing the value of property embraced in the charter of the City of Moultrie is similar to the general scheme for the assessment of property as declared in section 862 of the Civil Code, which provides: " The mayor and council for each town or city are authorized, at their option, to elect three free-holders, residing in the town or city, as assessors, who shall value and assess all the property within said town or city liable for taxation. All persons dissatisfied with the value placed on their property shall appear before said assessors and produce testimony as to the value of property; and the decision of said assessors, after hearing the evidence, shall be final: Provided, that this section shall not affect towns or cities now having the power to appoint assessors."

The case of *Savannah &c. Ry. Co.* v. *Savannah, 96 Ga.* 680 (23 S. E. 847), turned largely upon the fact that the charter did not make sufficient provision for notice to owners as would allow them an opportunity to be heard with reference to the amount of compensation to be paid them before assessment should become finally binding and conclusive upon them. In the case of *Shippen Lumber Co.* v. *Elliott, 134 Ga.* 699 (68 S. E. 509), it was said: " In so far as the charter of the town of Ellijay (Acts 1890-1891, vol. 2, p. 898, sec. 10) purports to authorize the mayor and council to assess or raise the valuation of any unreturned property to its true market value, it is violative of the due-process clause of the constitution of the United States, and of the similar clause of the constitution of the State of Georgia, because no provision is made which affords the owner of any unreturned property a hearing on the question of its value." Here it will be observed it was distinctly pointed out that the part of the charter of the town purporting to authorize the mayor and council to assess or raise the value of any unreturned property to its true market value was violative of the due-process clauses of the Federal and State constitutions, for the reason that no provision was made which afforded the owner of unreturned property a hearing on the ques-

tion of its value; and that defect does not exist in that part of the charter of the City of Moultrie which we have under consideration.

In view of what is said above, the judgment of the court dismissing the petition in this case upon demurrer was not error.

*Judgment affirmed.   All the Justices concur.*