(No. 21020.—

JAMES E. BISTOR *et al.* Appellants, *vs.* THE BOARD OF AS-
SESSORS OF COOK COUNTY *et al.* Appellees.

*Opinion filed December 17, 1931.*

WATKINS, TENHOOR & GILBERT, for appellants.

JOHN A. SWANSON, State's Attorney, LOUIS H. GEIMAN,
and JOHN E. PEDDERSON, (ROY MASSENA, C. J. HARRING-
TON, and HAYDEN N. BELL, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The superior court of Cook county having sustained a
general demurrer to an amended bill in equity for an in-
junction and the complainants electing to stand by their
amended bill, the court ordered it dismissed for want of
equity, and the complainants have appealed.

The complainants are James E. Bistor and thirty-four
others, all being citizens of Illinois, the owners of real and

personal property in Cook county and tax-payers, and the bill was filed in behalf of themselves and all other tax-payers similarly situated. The defendants are the board of assessors and the board of review of Cook county and the members of those boards, and the relief sought is a mandatory injunction requiring the board of review and its members to deliver to the board of assessors all of the assessment books, documents, records, record cards or other data in the possession or control of the board of review relative to the 1930 assessment of real estate in Cook county, Illinois, and directing the board of assessors to hold hearings on the complaints of tax-payers against the assessment of their real estate in Cook county for the year 1930, and that such hearings shall be in open public meetings of the board, and that the board of assessors and its members shall have before them at the time of said hearings the record cards, assessment books and data necessary for the hearing and determination of the complaints, and that after the hearing of the complaints the board of assessors shall revise and correct the assessment of real estate in Cook county for 1930 and enter all such revisions and corrections in the assessment books. The bill further prays a preliminary injunction restraining, until the further order of the court, the board of review from doing any work upon, incurring any obligation or expending any money in the revision, review or correction of the assessment of real estate in Cook county for 1930, and that upon a final hearing a permanent injunction may be granted ordering the board of assessors to hold the hearings, as has been already stated, and after such hearings to revise and correct the assessment of real estate in Cook county.

The allegations of the amended bill upon which the right to relief prayed is predicated set forth the existence of the board of assessors and the board of review and their respective duties in regard to the assessment of property for taxation and the revision and correction of the assess-

ment. The amended bill further shows the existence of a State Tax Commission, with authority to prescribe regulations relative to the assessment of property for taxation which shall be binding upon the board of assessors, and the adoption by the commission of rule 15, which provides, in substance, that in counties having a population of more than five hundred thousand, upon the completion of the valuations and assessments of all parcels of land and the improvements thereon in each town or taxing district, and before the revision thereof, the assessment shall be tabulated and abstracted by sections, divisions, subdivisions and blocks or parts thereof, such abstracts to be prepared in triplicate and include information concerning each individual parcel of land and the improvements thereon, showing "(a) volume, page and line of assessment book; (b) address of property; (c) town, section and range of property; (d) index number; (e) dimensions of lot or land; (f) valuation of land; (g) type and unit price of building; (h) condition of building; (i) building valuation; (j) assessment of land; (k) assessment of building." One copy of such abstract for each town or taxing district is to be retained in the office of the board of assessors, one to be filed with the board of review and one to be filed with the tax commission. All hearings and decisions in the review or revision of the assessments of real estate, either by the board of assessors or the board of review, shall be taken in open public meetings of the respective boards. The correction or revision of individual assessments of real property by the assessors making them, or the review thereof by the board of review upon the complaints of owners or other tax-payers, shall be made only on written complaints of such owners or tax-payers or their duly authorized agents, which shall state the facts on which they are based. The complaint shall be in the prescribed form and in all cases shall state the fair cash market value of the real property, including the improvements, and in case the complaint is based on a claim of over-valuation or

under-valuation, the amount of the alleged over-valuation or under-valuation in land or improvements, or both, shall be separately stated. Provision is made by the rule for the giving of notice of such complaints and of the time of the hearing of them. Every decision by the board of assessors or board of review making a change in any assessment must be publicly announced, the reasons therefor briefly stated and a minute of the decisions and reasons entered in a record of the proceedings, which shall be permanently preserved and be open to public inspection, and a notation of each change must be made in the assessment books in ink of a color different from that already appearing therein. The amended bill further alleged that the board of assessors published a notice that it would meet on June 9, 1931, for the purpose of revising the assessment of real estate in Cook county for the year 1930, and fixed the days of June 16 to 19, inclusive, for aggrieved tax-payers to make application for revision of their assessments; that on May 15, 1931, thirty days before the time set for the hearing of such complaints, the board of assessors began totaling and footing the figures in the books containing the assessments of real estate in Cook county, and proceeded in utter disregard of the hearings required to be held and the revisions and corrections that would result from a *bona fide* consideration of the complaints of tax-payers, and on June 1 ordered all books of assessments footed and closed as quickly as possible and that no changes in the books would be made as a result of hearing tax-payers' complaints, and on June 9, before any complaints had been heard, the board ordered all books containing the assessments of real estate for 1930 for ten of the thirty-eight townships in Cook county to be locked in the vault of the board of assessors and that no change, revision or alteration should be made in those books; that those assessment books have been turned over to the board of review of Cook county without revision or correction of the assessments therein and all the books containing

illegal and incomplete assessments of real estate in Cook county; that from June 18 to June 22, 1931, the complainants, and each of them, called at the offices of the board of assessors complaining against the assessments of their real estate and requested the board of assessors to grant them a hearing upon their several assessments, and on June 19 more than five thousand tax-payers appeared at the offices of the board of assessors to make complaints and obtain hearings and corrections of their assessments, but the members of the board urged them to return on the succeeding Saturday, Sunday or Monday, and dissuaded many from filing their complaints or availing themselves of their legal rights by giving false information to them and falsely informed them that the board of assessors had nothing to do with the making of the assessments or the revising and correcting thereof but the remedy of the tax-payers was before the board of review. The amended bill further alleges that the complainants appeared before the board of assessors and filed their written complaints against the assessment of their respective property and asked for hearings thereon, but the board of assessors stated that it would not revise and correct the assessments; that it did not hold hearings on the property or revise its assessments; that during the days set for the filing of complaints, holding of hearings and revision and correction of the assessments the members of the board did not have before them or make use of the record cards having the necessary data regarding the complaining tax-payers' property or any of the facts upon which they could in good faith hold a fair and legal hearing and make a proper revision and correction of the assessments but they made meaningless form and pretense of holding hearings, and such action was carried on in bad faith and for improper motives by the board of assessors for the fraudulent purpose of depriving the tax-payers of their rights to a hearing and to obtain a reduction of their several assessments. It was further alleged that the board

of review had formally and officially declared that it had no obligation to grant hearings to tax-payers complaining against the assessment of their real estate except where the assessments had been increased; that it has positively refused to hold such hearings for the years 1928 and 1929, and the board of assessors has refused the complainants, and all other real estate tax-payers in Cook county, legal hearings on their written complaints and a revision and correction of their assessments, and has given to the tax-payers as their sole hope of relief the impotent promise that such complaints will be forwarded to the board of review, and the real estate tax-payers of Cook county, though subjected to enormous tax burdens, are thus denied the opportunity of presenting their cause to either of the two tribunals alone created for revision and review of their assessments. It was further alleged that the board of assessors has refused to hold *bona fide* hearings upon and to revise and correct the assessment of real estate in Cook county for the year 1930; that the members of the board have fraudulently conspired to defeat efforts of tax-payers to obtain hearings and corrections, and have forced tax-payers to appear before them individually and not as members of the board of assessors; that the members of the board from June 16 to June 22 sat individually and not as a board of assessors, and held illegal and fraudulent pretenses of hearings and forced tax-payers to present their complaints and be heard by various persons not members of the board of assessors and neither obliged nor authorized by law to hold hearings, and the members of the board of assessors and its employees did not exercise judgment or discretion in hearing such complaints but acted arbitrarily and capriciously. It is averred that the fraudulent and unlawful action of the board of assessors and its members, unless otherwise ordered by the court, will endanger the collection of the taxes in Cook county for the year 1930; that the maintenance of government in Cook county is already seriously threat-

ened by inability to collect the taxes for the years 1927, 1928 and 1929; that many millions of dollars of taxes are still uncollected for the years 1927, 1928 and 1929; that the tax-payers feel themselves wronged by the disregard of their legal rights by the board of assessors and will therefore be antagonistic toward paying the 1930 tax unless given redress of their grievances by the court and will refuse to pay their taxes for 1930 until they have exhausted all legal remedies and thus cause great delay in the collection of the tax, and the conduct of the board will thus result in greatly delayed and decreased tax collections; that the governments of Cook county will therefore have to borrow large additional sums of money, the interest charges will be greater due to the action of the board of assessors, and it will, unless remedied, make the assessments invalid and cause public disorder and financial loss through loss of the taxes that will not be collected. The bill shows that the board of review has received from the board of assessors the books containing the assessments of real estate for the year 1930 and has stated that it will forthwith begin to expend large sums of money in the process of reviewing the assessments; that the assessments contained in those books are incomplete, illegal, fraudulent, unrevised and uncorrected; that the action of the board of assessors and the board of review, unless enjoined by the court, will subject the complainants and each tax-payer in Cook county to irreparable harm and injury, for which they have no just and adequate remedy at law. Therefore the bill prays for the relief which has been mentioned.

The only question presented by the record and argued by counsel is the jurisdiction of a court of equity to entertain the bill. The manner in which an assessment is to be made, corrected and revised by the board of assessors is regulated by the statute, of which judicial notice is taken, and the rules prescribed by the tax commission, which are set out in the amended bill. The bill shows that the board

of review has received from the board of assessors the books containing the assessments of real estate in Cook county as made, corrected and revised by the board of assessors and is about to begin the work of reviewing and revising the assessment. It is averred that the work of the board of assessors was not properly done according to the statute; that it disregarded the law in the performance of its duties, denied opportunity of complaining, denied hearings, and that complainants were heard by individual assessors and not by the full board or were heard by persons who are not members of the board. Many serious irregularities are alleged which are said to affect thousands of tax-payers and for which it is asked that the whole assessment of real estate in Cook county be held up by enjoining the board of review from performing any work upon the correction of the assessment for the year 1930 until the board of review has returned and re-delivered to the board of assessors all of the assessment books, documents, records and record cards and other data in the possession or control of the board of review relative to the 1930 assessment and until the board of assessors has heard the complaints of the complainants in the cause in the manner prescribed by the statute and the rules of the tax commission and has revised and corrected the assessment accordingly.

The supervision of the officers appointed by law for the assessment of property for taxation by directing them in advance how they shall proceed is foreign to the jurisdiction of equity. The statutes and the rules established by the tax commission prescribe in detail the method of proceeding of those officers whose duty it is to make the assessment. If they have acted without jurisdiction, or if they have refused to act when they had jurisdiction and it is their duty to act, the remedy is not in a court of equity but is by *mandamus*. It is the long established and well recognized practice in this State that a court of equity will exercise jurisdiction to enjoin the collection of a tax where

the tax is not authorized by law, where it is assessed upon property not subject to taxation and where the property has been fraudulently assessed at too high a rate. (*Porter v. Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561; *Pacific Hotel Co.* v. *Lieb,* 83 id. 602; *Chicago, Burlington and Quincy Railroad Co.* v. *Cole,* 75 id. 591; *New Haven Clock Co.* v. *Kochersperger,* 175 id. 383; *Calumet and Chicago Canal and Dock Co.* v. *Stuckart,* 275 id. 253.) This is not a case of that kind. The bill in this case attacks the assessment because it is alleged the assessing officers have failed to follow the course imposed upon them by law in making the assessment, and it is not a bill which seeks to correct the wrong done to the complainants alone, but it seeks to have a court of equity assume general supervision of the assessment and direct in advance the officers charged with the duty of making it, as to the manner in which they shall proceed.

*New Haven Clock Co.* v. *Kochersperger, supra,* was a bill to enjoin the collection of taxes extended against the complainant on a valuation in excess of $200. The case was disposed of on a demurrer to a bill and supplemental bill which alleged the filing with the assessor of a schedule of the personal property of the complainant showing property of the value of $2000. Other personal property in the town was assessed at not more than ten per cent of its fair cash value, and the assessor said he would assess the property of the complainant at the same rate, which would make the assessment $200. Without notice to the complainant the assessor assessed the property at $5000. This assessment was wrongfully made as a part of a scheme to assess the complainant and other persons, firms and corporations at a disproportionate and excessive rate, to extort money as a bribe for a reduction to the uniform rate applied to property in general. The complainant filed an application with the county board to revise the assessment and introduced evidence in support of it, which was heard, and the

application was taken under advisement by the county board, which neither granted nor denied the application but referred it to the finance committee, and that committee reported as to this and other applications that it had decided to make no recommendation except that the complaints be placed on file without prejudice to complainant's appeal to the court, and this report was adopted by the board. A further report of the committee to the board on the subject of equalizing valuations between the towns of Cook county, reciting, among other things, the existence of unfair assessments and inequality and injustice between individuals, which it was impossible for the board to go into further than had been done, contained a resolution that the assessments as returned by the assessor, with certain reductions made by the county board, should be declared to be the assessments for the year 1897. This report was also adopted by the board, and by this action the county board refused to act upon the application of the complainant and to decide the question of complainant's grievance submitted to it under the statute. The court held that the complainant having presented its grievance to the county board, that board undertook to divest itself of the duty imposed upon it by law by resolving that it was impossible to go into inequalities and injustice against individuals and to hear and decide the case as required by law. This, it was held, was no more nor less than a refusal of the board to do its duty and the law would have compelled its performance on the application of the complainant, citing the cases of *Beidler* v. *Kochersperger,* 171 Ill. 563, and *Kochersperger* v. *Larned,* 172 id. 86. It was held that *mandamus* would lie to compel a consideration of the complaint, and that upon the failure of the complainant to pursue a remedy which the law affords him and which is intended to be adequate for the relief of the tax-payer, equity would not take jurisdiction of the cause and grant relief against the fraudulent assessment. That is the case which the complainants undertake

to make here. They alleged that they made complaints which the board of assessors was bound to hear but were refused a hearing, and if the allegations of the bill are true and the appellants' views of the law are correct, the remedy provided for them by law was to apply for a writ of *mandamus* and not for an injunction.

The appellants' bill, however, does not seek a redress of the individual wrongs which they have suffered by the denial of a hearing of their complaints of the assessment of their property. It goes further than that and asks a court of equity to take charge of and supervise the whole assessment of all the real estate in Cook county. The purpose of the bill is not primarily to secure a hearing by the board of assessors of their complaints, but is to correct public evils in the conduct of the business of the board of assessors and to correct the manner of the performance of their duties by the board of assessors and the board of review. In regard to such a bill it was said in *City of Chicago* v. *Union Building Ass'n,* 102 Ill. 379: "In no case has it ever been held that a private individual may maintain a bill to enjoin a breach of public trust (in the absence of statutory authority) without showing that he will be specially injured thereby. * * * Indeed, in a number of the States the courts have expressly denied the right of a private tax-payer to have restrained a threatened illegal municipal act that will result in increased taxation, holding that the only remedy therefor must be sought through those representing the public." In support of these propositions several cases are cited in the opinion, and Dillon on Municipal Corporations (1st ed. sec. 736) is also cited, as follows: "The author may observe that there appears to be no difference of judicial opinion as to the right of the taxable inhabitants, whenever the threatened illegal corporate act will increase the burden of taxation, to invoke the aid of equity to prevent it. The difference is as to the proper party plaintiff in a bill of this character. If the ordinary principle is

applied, it must be admitted that where the duty about to be violated by the corporation or its officers is public in its nature and affects all of the inhabitants alike, one not suffering any special injury cannot, in his own name or by uniting with others, maintain a bill to enjoin it. * * * But it is agreed that any taxable inhabitant, or perhaps any citizen of the municipality, has such an interest to prevent or avoid illegal corporate acts that he may be a relator, on whose application the proper public officer of the commonwealth may, on behalf of the public, file the requisite bill to enjoin the menaced illegal act, or if it has been consummated to have relief against it." In the case of *Seager* v. *Kankakee County,* 102 Ill. 669, the case of *City of Chicago* v. *Union Building Ass'n, supra,* is cited as establishing the proposition that where the duty about to be violated by public officers is public in its nature and affects the public in general alike, one not suffering any special injury cannot maintain a bill to enjoin the violation, but the only mode of remedy is on application of the proper public officer of the State on behalf of the public. The cases cited by the appellants in support of the proposition which they maintain, that equity has power to compel the board of assessors to hold actual hearings and to revise and correct the assessments, do not support that proposition. They are cases of injunctions brought against taxing officers by individuals to enjoin the collection of taxes against the individual property of the complainants, and none of them involve any question of a right of a court of equity to compel any action to be taken by public officers in the performance of their duty in regard to the assessment of property or the extension or collection of taxes.

The decree is affirmed.

*Decree affirmed.*