CITY OF MACON *v.* RIES, executrix, *et al.*

No. 10049. MARCH 14, 1934.

*E. W. Maynard* and *J. E. Hall Jr.*, for plaintiff in error.

*Park & Strozier* and *Walter T. Johnson*, contra.

HUTCHESON, J. A number of taxpayers of the City of Macon sought injunction against the city to prevent the collection of taxes on their property. The city demurred to the petition. The demurrer was overruled, and the city excepted. The charter of the city (Ga. L. 1927, pp. 1283, 1338, sec. 94), provides: "When any property in the City of Macon has been returned for taxation at a value which in the opinion of the said board of tax-assessors is less than its fair market value, it shall be the duty of said board to ascertain the fair market value of said property and to assess it for taxation at said market value. When any assessment is made as herein provided, it shall be the duty of said board, within ten days after the making of said assessment, to give to the owner of such property notice in writing of said assessment. Such notice shall specify the amount of the assessment made, indicate the property assessed, and shall inform the owner that he may be heard on the justness and fairness of said assessment and of the time and place of the hearing. Said notice shall be by mail not registered. . . Any taxpayer who may, after a hearing by the board, be dissatisfied with the action of said board on any such hearing, shall have the right to appeal to the mayor and council thereon, whose decision on said appeal shall be final."

Here the taxpayers returned their property for taxation. The city tax-assessors were not satisfied with the return, and raised the assessment; and it was their duty, as provided by the above-quoted provision of the charter of the city, to give written notice to the taxpayers, specifying the amount of the assessment made, and informing the owners that they might be heard on the justness and fairness of said assessment, and of the time and place of the hearing. The taxpayers appeared at the time and place fixed by the tax-assessors, but the "board of tax-assessors refused petitioners a hearing upon the justice and fairness of said assessments, and would not permit them to testify or to introduce evidence to show that the said assessments were not just and fair, that they had not been equalized with other properties in the city similarly situated, but were grossly in excess of other returns and assess-

ments made, and would not permit them to show that the values fixed in said assessments were greatly in excess of the fair market value of petitioners' properties respectively; petitioners not being given the right of any hearing at all as contemplated by the city charter. Instead of giving petitioners a hearing on the justness and fairness of such assessments as in the city charter contemplated and provided, the said board of tax-assessors arbitrarily reduced the assessments made of most of petitioners' properties approximately ten per centum, without regard to whether or not the assessments as so reduced represented the fair market value of the property or were equal and fair as compared with the assessments of other properties in the city similarly situated and of the same relative value. . . Within the time fixed by the city charter, petitioners filed their appeals from the assessments made by the city board of tax-assessors to the mayor and council of the City of Macon, as authorized by the said city charter, although, as hereinbefore recited, the said board of city tax-assessors had denied to petitioners the hearing as provided by the charter. The said appeals were referred by the mayor and council to the license and tax committee of the said council, before which said committee petitioners appeared and demanded a hearing. But . . the said license and tax committee refused to give petitioners and other taxpayers a hearing on the justice and fairness of the assessments made against them, or to permit petitioners to be sworn, or to call witnesses in their behalf, to show that the assessments made by the city board of tax-assessors were unjust and unfair, and that the values as fixed by them did not represent the fair market value of petitioners' properties respectively, and had not been equalized with the returns and assessments of other taxpayers, but on the contrary were greatly in excess of the market value of petitioners' properties, and were grossly unequal as compared with other taxpayers of the said city. Instead of giving to petitioners a hearing as contemplated by the city charter, with the right to introduce evidence, the said license and tax committee arbitrarily made a small reduction in some of the assessments as fixed, without regard to whether the assessments as so reduced represented the fair market value of petitioners' properties, or were in line with the assessments of other property in the city. Petitioners protested that they had been denied the rights given to them under the city charter, and insisted that their said

appeals should be considered. But the said committee of council still declined and refused to give to petitioners a hearing on their said appeals. The mayor and council of said city accepted and approved the report of the license and tax committee, which had arbitrarily fixed the assessments of petitioners' properties without a hearing, and without regard to the market value of said properties, and without regard to the equality of the assessments of petitioners' properties with that of other taxpayers in said city. . . Under the terms of the charter of the city, the decision of the mayor and council on appeals from the board of tax-assessors is made final and conclusive." Petitioners allege that the assessments of their property were made in violation of the provisions of the charter; that they have been denied rights guaranteed to them under the charter; that if the assessments are allowed to stand and executions are issued and levied. on their properties, they will be deprived of their property without due process of law, in violation of art. 1, sec. 1, par. 3, of the constitution of this State (Code, § 6359), and of the fourteenth amendment to the constitution of the United States (§ 6700) ; that the illegal procedure by the city in assessing said properties and demanding payments of taxes on these assessments, and in denying petitioners the right to a review of the assessments, is in violation of art. 1, sec. 1, par. 2, of the constitution of this State (§ 6358), which declares that "Protection to person and property is the paramount duty of government, and shall be impartial and complete;" and they have been denied the equal protection of the laws guaranteed them by the fourteenth amendment (§ 6700).

■ The City of Macon having closed its doors to the petitioners, they had no court except a court of equity, having been denied a right guaranteed to them by both the State and Federal constitutions. Due process of law requires, that, "after such notice as may be appropriate, the taxpayer have opportunity to be heard as to the validity of a tax and the amount thereof, by giving him the right to appear for that purpose at some stage of the proceedings." Turner v. Wade, 254 U. S. 64 (41 Sup. Ct. 27, 65 L. ed. 134) ; Central of Ga. R. Co. v. Wright, 207 U. S. 127 (28 Sup. Ct. 47, 52 L. ed. 134). "The fundamental idea in 'due process of law' is that of 'notice' and 'hearing.' It means that the citizen must be afforded a hearing before he is condemned. There must be a hearing first, and judgment can be rendered only after trial." *Arthur*

v. *State,* 146 *Ga.* 827, 828 (92 S. E. 637). See *Mott* v. *State Board,* 148 *Ga.* 55, 59 (95 S. E. 867) ; *Shippen Lumber Co.* v. *Elliott,* 134 *Ga.* 699, 702 (68 S. E. 509). It was held in *Friedlander* v. *Moultrie,* 155 *Ga.* 184, 186 (116 S. E. 845), that the provision for a hearing, properly construed, gives to the taxpayer of the city an opportunity to submit evidence to support his objections to any assessment which he desires to contest, and to show that the same is excessive. The rule is thus laid down in 26 R. C. L. 345: "A hearing in its essence implies that one who is entitled to it shall have the right to support his allegations by argument and proof." In Windsor *v.* McVeigh, 93 U. S. 274 (23 L. ed. 914, 916), it was said: "But notice is only for the purpose of affording the party an opportunity of being heard upon the claim or the charges made; it is a summons to him to appear and speak, if he has anything to say, why the judgment sought should not be rendered. A denial to a party of the benefit of a notice would be in effect to deny that he is entitled to notice at all, and the sham and deceptive proceeding had better be omitted altogether. It would be like saying to a party : appear, and you shall be heard, and, when he has appeared, saying : your appearance shall not be recognized, and you shall not be heard. . . It is difficult to speak of a decree thus rendered with moderation; it was, in fact, a mere arbitrary edict, clothed in the form of a judicial sentence." It is alleged that on appeal before the committee appointed by the mayor and council of the City of Macon the taxpayers were again denied the right to offer proof and to be heard on the question of the fair market value of their properties, but that the committee arbitrarily made its assessment without hearing from the petitioners. Whether or not an appeal as in the instant case was a de novo investigation, certain it is that this was the only method of getting their case before the committee, by proof and argument with reference to the fair market value of their property; and this was denied them. In *Hewin* v. *Atlanta,* 121 *Ga.* 723 (3) (49 S. E. 765, 67 L. R. A. 795, 2 Ann. Cas. 296), it was held that "Persons against whom an unlawful exaction in the form of a tax is sought to be made may unite in an application for an injunction to restrain the collection of the tax, and are not compelled to pay the same and bring separate suits against the tax officer for damages." The taxpayers in this case had followed strictly the law as laid down

by the charter of the City of Macon, and were denied the right to be heard. Where no remedy is provided by statute, injunction is the proper remedy. *McIntyre* v. *Harrison,* 172 *Ga.* 65, 74 (157 S. E. 499) ; *City of Atlanta* v. *Jacobs,* 125 *Ga.* 523 (54 S. E. 534).

■ The plaintiff in error contends by demurrer that the appeal provided for in the city charter of Macon does not mean a de novo hearing or proceeding. The charter provides (Ga. L. 1927, p. 1338, sec. 94) that any taxpayer who, after a hearing by the board of tax-assessors, may be dissatisfied with the action of that board on any such hearing, "shall have the right to appeal to the mayor and council thereof, whose decision on said appeal shall be final." It was held in *Central Georgia Power Co.* v. *Cornwell,* 139 *Ga.* 1 (3) (73 S. E. 387, Ann. Cas. 1914A, 880) : "An appeal from an award of assessors appointed in condemnation proceedings under the Civil Code, §§ 5206 et seq., is a de novo investigation, and the defendant in such proceedings may file an appropriate legal defense thereto." In 3 C. J. 314, 315, § 28 (2 a), it is said: "In its original and strictly technical sense an appeal was a proceeding introduced into equity practice from the civil law, by which the whole case was removed from a lower to an appellate court, and there tried de novo upon evidence newly introduced, being subject to a new and final determination as if it had not been tried before, and without any reference to the conclusions of the inferior court." An appeal from an inferior to a superior court for another trial, as an original case, was unknown to the common law. Such appeals are of statutory origin, and the practice and mode of procedure are prescribed by statute. The appeal provided by the charter of the City of Macon makes no provision with reference to mode and procedure, and in determining the mode of procedure our general statutes must be looked to. In this State appeals to the superior court lie in all cases tried in a justice's court, or in a county court, and from any decision made by the court of ordinary. Civil Code (1910), §§ 4998, 4999. When an appeal has been entered in the court of ordinary, it shall be the duty of the ordinary to transmit the same to the clerk of the superior court of the county in which such proceedings may have been had, . . to be there tried as other appeals. § 5012. "An appeal to the superior court is a de novo investigation. It brings up the whole record from the court below; and all competent evidence is admissible on the trial

thereof, whether adduced on a former trial or not; either party is entitled to be heard on the whole merits of the case." § 5014. In *Robinson* v. *McAlpin*, 130 *Ga.* 489, 490 (61 S. E. 115), it was said: "It will be seen from a comparison of these code sections, which are in pari materia, that substantially the same procedure is provided in all cases where an appeal is allowed to the superior court. . . The statutory appeal providing for another trial in the appellate court on the merits of the case is altogether different from a writ of error on appeal for the correction of errors in a trial eventuating in a judgment from which an appeal is taken. In the latter proceeding the inquiry is into the correctness of the judgment upon the pleading and evidence before the trial court; the appellate court affirms or reverses in whole or in part the judgment on review, and certifies the result to the trial court, where the final judgment is entered. That procedure has nothing in common with that of a statutory appeal. The statutory appeal gives to litigants in certain cases the right to another trial in the superior court, upon compliance with certain requisites. The trial in the superior court is had without reference to the evidence introduced in the former trial, and is a de novo investigation." So, we are of the opinion that the appeal contemplated by the charter provision above quoted is a de novo investigation into the merits of the contentions of the taxpayers, with the right to introduce evidence and be heard on the questions incident thereto.

■ The demurrer raises the point that the petition is multifarious; that there is no common right of these taxpayers against the city; that each owns individual property and that each is liable for his individual taxes. The question at issue is whether the taxpayers were denied the right to present their case before the board of tax-assessors, and before the mayor and council on appeal. In this question each and all of the plaintiffs were interested, each and all were denied this right, and each and all brought the present petition for equitable relief, complaining of the denial of this right. "Where a number of people have a common interest in the result of a suit, they can all join in an action to assert their rights, and parties being so joined does not make the case open to the objection that there is a misjoinder of parties plaintiff." *East Atlanta Land Co.* v. *Mower*, 138 *Ga.* 380 (3) (75 S. E. 418). See *First National Bank of Sparta* v. *Wiley*, 150 *Ga.* 759 (105 S. E. 308). "A

court of equity will entertain jurisdiction over matters where a multiplicity of suits would render a trial difficult, expensive, and unsatisfactory at law." *Goolsby* v. *Board of Drainage Comrs.,* 156 *Ga.* 213 (6) (119 S. E. 644); Civil Code (1910), § 4586; *Blaisdell* v. *Bohr,* 68 *Ga.* 56.

■ It is contended that the taxpayers did not come into a court of equity with clean hands; that they did not offer to do equity, in that they failed to tender the amount of taxes which they admit, either expressly or impliedly, that they owed when they made a return of their property for taxation. The returns they made were rejected by the board of tax-assessors, which left no valuation upon which a tax could be computed; and until there is a legal assessment there can be no tax, the assessment made by the board being illegal for the reason that the plaintiffs were denied a hearing at the fixing of the assessments. In Norwood *v.* Baker, 172 U. S. 269, 293 (43 L. ed. 443), Mr. Justice Harlan, after quoting from High on Injunctions, "It is held, however, that the general rule requiring payment or tender of the amount actually due as a condition to equitable relief against the illegal portion of the tax has no application to a case where the entire tax fails by reason of an illegal assessment; and in such case an injunction is proper without payment or tender of any portion of the tax, since it is impossible for the court to determine what portion is actually due, there being no valid or legal tax assessed," said: "The present case is not one in which—as in most of the cases brought to enjoin the collection of taxes or the enforcement of special assessments—it can be plainly or clearly seen, from the showing made by the pleadings, that a particular amount, if no more, is due from the plaintiff, and which amount should be paid or tendered before equity would interfere. It is rather a case in which the entire assessment is illegal. In such a case it was not necessary to tender, as a condition of relief being granted to the plaintiff, any sum as representing what she supposed, or might guess, or was willing to concede, was the excess of cost over any benefits accruing to the property." See *City of Camilla* v. *Cochran,* 160 *Ga.* 424, 430 (128 S. E. 194). This is not a case where the contention is that the assessment is excessive, thus admitting that some amount is due; but it is contended that the entire assessment is void for the reasons stated in the petition. The tax-assessors have said that they will not accept

taxes based upon the voluntary returns by the taxpayers; and the assessments made by the assessors being illegal, there is no property value upon which a tax could be figured.

■ The court did not err in overruling the demurrers to the petition. *Judgment affirmed. All the Justices concur, except*

GILBERT and BELL, JJ., dissenting. The plaintiffs made returns of their property at valuations clearly stated by them, and thus admitted to be fair. In these circumstances, they should not have relief in equity to avoid the assessments made by the city authorities, without tendering the amounts due and payable under their own valuations. Conceivably the assessors might reduce the valuations as stated in such returns, but it is not insisted that any such reduction should be made. So far as appears, the plaintiffs are merely complaining of the act of the assessors in raising such valuations. Under the facts of this case, a tender of the tax due upon the valuations stated in the returns should have been made. *Linder* v. *Watson,* 151 *Ga.* 455 (2) (107 S. E. 62); People's National Bank v. Marye, 191 U. S. 272, 287 (24 Sup. Ct. 68, 48 L. ed. 180); Raymond v. Chicago Union Traction Co., 207 U. S. 20, 38 (28 Sup. Ct. 15, 52 L. ed. 78). The present case is distinguished from cases where an assessment is made under a void statute or ordinance, or the property is not at all subject to be taxed or assessed as claimed. Cf. *City of Camilla* v. *Cochran,* 160 *Ga.* 424 (supra); Norwood v. Baker, 172 U. S. 269, 292 (supra).

Furthermore, the plaintiffs failed to avail themselves of their legal remedies. When the taxing authorities refused to give the plaintiffs a hearing, mandamus was a remedy open to each of the plaintiffs to compel a hearing. *Schlesinger* v. *Atlanta,* 161 *Ga.* 148, 165 (129 S. E. 861); *Garrison* v. *Toccoa Power Co.,* 177 *Ga.* 850 (171 S. E. 564); Coxe v. Salomon, 188 Ill. 571 (59 N. E. 422); White v. Raymond, 188 Ill. 298 (58 N. E. 976); Curless v. Watson, 54 Ind. App. 110 (100 N. E. 576); Bistor v. Board of Assessors, 346 Ill. 362 (179 N. E. 120); Marion Mfg. Co. v. Board of Commissioners, 189 N. C. 99 (126 S. E. 114). The assessments were not void because the assessors or other officials refused to allow a hearing, but were merely erroneous or irregular. The plaintiffs, having failed to proceed at law at the proper stage, should not now be permitted to treat the assessments as void and to cut across them by a petition in equity. Equity is not a remedy to cure hard-

ships resulting from failure to pursue a proper legal remedy at the proper time. In such case the rule is not changed because many are in the same situation; although in some cases a court of equity may entertain a petition by several having a common right, for the purpose of avoiding a multiplicity of suits, when one alone could not thus proceed. *Mayor &c. of Gainesville* v. *Dean,* 124 *Ga.* 750 (53 S. E. 183); *Sanders* v. *Gainesville,* 141 *Ga.* 441 (81 S. E. 215); *Wilkins* v. *Savannah,* 152 *Ga.* 638 (111 S. E. 42). For the reasons stated, if not for others, the petition failed to state a cause of action, and should have been dismissed on general demurrer.